STATE of Minnesota, Appellant,

v.

Joon Kyu KIM, Respondent.

No. C4-85-828.

Court of Appeals of Minnesota.

Oct. 15, 1985.

Review Granted Dec. 13, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Ramsey Co. Atty., St. Paul, for appellant.

Douglas W. Thomson, Deborah Ellis, Thomson & Hawkins, St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

The State appeals the trial court's evidentiary ruling in a prosecution for third and

fourth degree criminal sexual conduct. The trial court ruled that testimony about the population frequency of certain genetic markers that were identified through electrophoresis testing of dried semen stains was not admissible. Respondent Joon Kyu Kim seeks review of an evidentiary ruling that electrophoresis met the *Frye*[1] standard for scientific acceptance and that the results of such tests are admissible.

Kim argues that the State failed to establish that the suppression ruling will have a critical impact on the outcome of the trial. We agree and affirm.

### FACTS

The State has charged Joon Kyu Kim with third and fourth degree criminal sexual conduct. The charge is based on a report filed by an employee of Kim's alleging that he came to her apartment on December 10, 1984, and forced her to have sex with him.

At the time the alleged victim filed the report, she gave police several items of evidence including the bed sheet from the site of the alleged rape. Also, samples of blood, saliva and hair were taken from the alleged victim, her husband and Kim. All of this evidence was given to the Minnesota Bureau of Criminal Apprehension's forensic science lab for testing.

A BCA lab analyst performed two types of tests on this evidence, the standard ABO blood typing and electrophoresis. Electrophoresis is a lab process that identifies different blood enzymes or "genetic markers." The test results showed that the stains on the sheet contained semen. From a comparison of the test results, the lab analyst concluded that the alleged victim's husband could not have been the source for these stains, but Kim could have been the source. Using genetic marker frequency tables, the analyst also concluded that only 3.6% of the population could have been the source of the semen.

A pretrial *Frye* hearing was held. The trial court ruled that the lab analyst could testify about electrophoresis test results but the analyst could not testify about the population frequency of the genetic markers identified from those results. The analyst was limited to testifying that the test results were consistent with the view that Kim was the source of the semen.

### ISSUES

1. Did the State show that the trial court committed clear error and the error will have a critical impact on the trial?

2. Must this court review the issue raised by respondent under Minnesota Rule of Criminal Procedure 28.04, subd. 3?

### ANALYSIS

#### I.

#### The State's pretrial appeal

When the State appeals a pretrial criminal order under Minnesota Rule of Criminal Procedure 28.04, the State must show:

clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.

*State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). The State in this case has failed to demonstrate either element.

#### A. Critical impact

The *Webber* standard for showing critical impact was derived from the now-repealed Minn.Stat. § 632.12. That statute required the prosecution, on appeal, to show that the trial court's ruling had left the State with evidence that was:

(1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed.

Minn.Stat. § 632.12 (repealed 1979). This is a narrow standard and is not easily met. *State v. Pelovsky*, 347 N.W.2d 529, 531 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Oct. 11, 1984). In this case, the State has failed to meet the standard.

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir.   1923).

■ The suppression of population frequency evidence will not have a critical impact on the trial for several reasons. The trial court's order did not actually suppress evidence of the electrophoresis test results. It only suppressed statistics that would further explain the evidence. The State may still present expert testimony that the test results are consistent with the view that Kim was the source of the semen. Kim's identity was not raised as a key issue in the State's case since the alleged victim knew Kim. Further, she is available to testify.

Thus, the evidence remaining after suppression is not insufficient as a matter of law nor is the State's case effectively destroyed by the suppression order. Absent such a showing, the State has failed to prove the trial court's order will have a critical impact on the trial.

### B. Clear error

■ The trial court stated that it was suppressing the population frequency statistics based on *State v. Boyd*, 331 N.W.2d 480 (Minn.1983) and *State v. Carlson*, 267 N.W.2d 170 (Minn.1978). Both cases held that statistical probability evidence was inadmissible. The State argues that evidence of the frequency of genetic markers in the population is nonexclusive evidence and is distinguishable from the probability evidence used in *Boyd* and *Carlson*.

*Boyd* and *Carlson*, however, do not focus on the nature of the statistics but rather on the impact of the statistics on the trier of fact. The court in *Boyd* expressed concern about statistical evidence because:

> there is a real danger that the jury will use the evidence as a measure of the probability of the defendant's guilt or innocence * * *.

331 N.W.2d at 483. In light of these decisions by the Minnesota Supreme Court, we cannot conclude that the trial court's suppression order was clearly erroneous.

### II.

### Kim's notice of review

■ Generally, a defendant in a criminal case does not have an independent right to review of pretrial evidentiary rulings. *State v. Kvale*, 352 N.W.2d 137 (Minn.Ct. App.1984). Minnesota Rule of Criminal Procedure 28.04, subd. 3, however, provides that a defendant *may* obtain review of pretrial orders that will adversely affect him when the prosecuting attorney appeals a pretrial ruling. This rule does not create an absolute right to review. Rather, the rule gives this court discretion to review a defendant's claims when the prosecution appeals.

■ We decline review in this case. Kim has an adequate remedy at law through an appeal after trial, if necessary. *State v. Hagen*, 342 N.W.2d 160 (Minn.Ct.App. 1984).

### DECISION

The State has failed to show that the trial court's order was a clear error and will have a critical impact on the trial. We decline to review the issue raised by the respondent under Minnesota Rule of Criminal Procedure 28.04, subd. 3.

Affirmed.