**STATE of Minnesota, Appellant,**

v.

**Dennis Charles KESSLER, Respondent.**

**No. C8–91–16.**

Court of Appeals of Minnesota.

May 21, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul and Richard M. Arney, Washington County Atty., Stillwater, for appellant.

Kevin J. Short, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and NORTON and DAVIES, JJ.

## OPINION

PARKER, Judge.

The state appeals from the trial court's order suppressing evidence. Respondent Dennis Kessler filed a notice of review challenging the trial court's order denying his motion to dismiss the complaint for lack of probable cause to proceed to trial. We affirm in part and reverse in part.

## FACTS

David Roettger, a police officer with the City of Stillwater, was assigned to work with the Washington County narcotics unit. In September 1990 an informant showed him the Kessler property from the road and gave him a diagram of the property. Roettger did not see marijuana from the road, but the informant's diagram indicated that marijuana grew on specific parts of the property.

Subsequently, Roettger and Dennis Moriarty, another narcotics officer, flew over Kessler's property in a State Patrol airplane. Using binoculars, Roettger observed plants which had the color and shape of marijuana and which were growing in areas consistent with the informant's diagram.

Based on the information from the informant and the results of the flyover, Roettger applied for a search warrant and prepared a supporting affidavit. He described the premises as "*1521* 216th Street North, Forest Lake, Minnesota." The trial court issued a search warrant on September 20, 1990, for the search of those premises.

Kessler lives with his wife on the corner of Forest and 216th Street, at *5821* 216th Street North, Forest Lake, Washington County. Roettger executed the warrant on Kessler's property. Roettger explained the discrepancy between Kessler's actual address and the address on the warrant as a clerical error; he had the correct address, but inadvertently put the incorrect address

in notes which were used to prepare the warrant.

The search of Kessler's house produced trays containing marijuana plants, grow lights, a timer, containers with marijuana seeds, potting soil, jiffy pots, plastic trays, wicker basket containing marijuana and paraphernalia, basket containing scales and paraphernalia, various weapons and ammunition, zig zag papers, a pipe, and marijuana. The police found a number of plants growing in Kessler's yard near the garage and dog kennel. Many of the items were seized from common areas of the house and areas that were easily accessible to either party. Kessler said during an interview with Roettger that "it was not his, that it was his wife's, and that he did in fact know that it was there."

The state charged Kessler with aiding and abetting four controlled-substance offenses: (1) third degree sale of controlled substance in violation of Minn.Stat. § 152.023, subd. 1(5) (1990) (*sale* of mixture of a total weight of five kilograms or more containing marijuana); (2) third degree possession of controlled substance in violation of Minn.Stat. § 152.023, subd. 2(6) (1990) (*possession* of mixture of a total weight of ten kilograms or more containing marijuana); (3) fifth degree sale of controlled substance in violation of Minn.Stat. § 152.025, subd. 1(1) (1990) (*sale* of mixture containing marijuana); and (4) fifth degree possession of controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1) (1990) (*possession* of a mixture containing classified substance).

Kessler moved to dismiss the complaint for lack of probable cause to stand trial; the trial court denied his motion, finding "probable cause to believe that [Kessler] aided and abetted in the commission of the offenses charged in the complaint." Subsequently, Kessler challenged the validity of the search warrant; the trial court granted his motion to suppress evidence, finding that the search warrant lacked sufficient particularity.

## ISSUES

1. Did the search warrant have a sufficiently particular description of the place to be searched?

2. Was the search warrant supported by probable cause?

3. Did the trial court err by denying Kessler's motion to dismiss for lack of probable cause that he aided and abetted controlled-substance crimes?

## DISCUSSION

### I

■ The fourth amendment to the Constitution of the United States provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment specifically requires a search warrant to "particularly describe the place to be searched." Minn. Const. art. 1, § 10, and Minn.Stat. § 626.08 (1990) contain similar provisions. *State v. Gonzales*, 314 N.W.2d 825, 827 (Minn.1982); *State v. Dyer*, 438 N.W.2d 716, 718 (Minn. App.1989), *pet. for rev. denied* (Minn. June 9, 1989); *State v. Schnorr*, 346 N.W.2d 380, 382 (Minn.App.1984).

The purpose of the particularity requirement is "to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate." 2 W. La Fave, *Search and Seizure* § 4.5, at 207 (1978) *quoted in Gonzales*, 314 N.W.2d at 827, and *Schnorr*, 346 N.W.2d at 382.

In *Gonzales*, 314 N.W.2d at 827, the Minnesota Supreme Court recognized that "[n]ot all errors in the search warrant's description of the premises to be searched will invalidate a search pursuant to the warrant." *See also* 2 W. La Fave § 4.5, at 207. "The test for determining the sufficiency of the description of the premises is whether the description is sufficient so that the executing officer can 'locate and iden-

tify the premises with reasonable effort' with no reasonable probability that [other premises] might be mistakenly searched." *Gonzales*, 314 N.W.2d at 827 (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.1979) *cert. denied* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979)); *see also Dyer*, 438 N.W.2d at 718; *Schnorr*, 346 N.W.2d at 382.

In *Gonzales*, 314 N.W.2d at 827, an informant showed the police a residence containing stolen property. The informant pointed to a residence about 200 yards away and told the sergeant that the address was 41 Wood Street. *Id.* The residence was on the corner of Wood and Delos Street; the correct address was 41 Delos Street. *Id.* The Minnesota Supreme Court concluded that the search was valid. *Id.* The court reasoned:

> [A]lthough it turned out that [the sergeant] learned when he executed the warrant that the address given in the warrant was incorrect, there was no reasonable probability that he was searching the wrong house because (a) he knew from talking to [the informant] which house was defendant's house, (b) the house did have the number 41 on it, (c) the house was a corner house bounded by Wood Street on one side, and (d) there were no other houses bearing the number 41 in the neighborhood.

*Gonzales*, 314 N.W.2d at 827.

Officer Roettger, who applied for and executed the warrant, had seen the Kessler house when meeting the informant. Kessler's house is a single-family residence with a detached garage and a dog kennel located on the corner of Forest and 216th Street in Forest Lake. Roettger and another officer, Moriarty, flew over the house in the State Patrol airplane and observed that the property layout conformed to the informant's diagram. Therefore, as in *Gonzales*, the mistaken address on the warrant does not relate to the propriety of the warrant.

In *Gitcho*, 601 F.2d at 372, the Eighth Circuit Court of Appeals reversed a district court order suppressing evidence where the search warrant misstated the address of the premises to be searched. The circuit court stated that "warrants have been routinely upheld 'where the description is partially inaccurate but has parts which identify the place to be searched with particularity.'" *Gitcho*, 601 F.2d at 371. The circuit court emphasized the importance of the officer's personal knowledge and the lack of prejudice to the defendant:

> Of even greater importance is the fact that the agents executing the warrant personally knew which premises were intended to be searched, and those premises were under constant surveillance while the warrant was obtained. The premises which were intended to be searched were, in fact, those actually searched.

*Gitcho*, 601 F.2d at 372. Professor La Fave also notes that the personal knowledge of the officer executing the search "is an element to be considered." W. La Fave, *Search and Seizure* § 4.5, at 210 (quoting *State v. Daniels*, 46 N.J. 428, 217 A.2d 610 (1966)).

This case presents no indication of subterfuge or intent to deceive the court or Kessler. No home was mistakenly searched. Kessler suffers no prejudice from the wrong address on the warrant. The attachments to the complaint establish that the officers executing the warrant went directly to the house that Roettger and Moriarty observed from the air and that the informant had shown Roettger on the ground. Regardless of the mistaken address in the warrant, they did in fact execute the warrant on the house meant to be searched. Such a clerical error, resulting in no prejudice, is not reversible error.

## II

■ Kessler argues in his responsive brief that the search warrant fails to meet the probable cause requirement. He did not, however, raise this issue in his notice of review and it is not properly before this court. Even if it were, the trial court made "a practical, common-sense decision [that] * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place" and did not abuse his

wide discretion. *State v. Wiley,* 366 N.W.2d 265, 268 (Minn.1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *see also Dyer,* 438 N.W.2d at 719.

The knowledge conveyed by the informant alone would be insufficient to provide probable cause to search, because the affidavit fails to establish his reliability or past performance. However, the flyover corroborated the information given by him. Roettger recognized marijuana by its color and characteristic shape, and the plants were in areas consistent with the informant's diagram. We conclude that the search warrant was issued upon probable cause.

### III

Minn.R.Crim.P. 2.01 provides:

[T]he facts establishing probable cause to believe that an offense has been committed and that the defendant committed it shall be set forth separately in writing in or with the complaint, or in supporting affidavits, and may be supplemented by sworn testimony of witnesses taken before the issuing officer.

The parties submitted probable cause upon the complaint and its attachments; testimony was not taken.

Minn.R.Crim.P. 28.04, subd. 3, provides:

Upon appeal by the prosecuting attorney, the defendant may obtain review of any pretrial or postconviction order which will adversely affect the defendant, by filing a notice of cross-appeal.

In *State v. Kim,* 374 N.W.2d 814, 816 (Minn.App.1985), *decision affirmed* 398 N.W.2d 544 (Minn.1985) (*Kim I*), this court held that Rule 28.04, subd. 3, "does not create an absolute right to review," but "gives this court discretion to review a defendant's claims when the prosecution appeals." *Id.* In the interest of judicial economy, we accept the notice of review of the probable cause determination. *Cf. id.*

The trial court denied Kessler's motion to dismiss the complaint for lack of probable cause and reasoned:

From the record before the Court and the reasonable inferences which can be drawn therefrom, probable cause is established to believe that Defendant was aware of the growing, usage, and possession of marijuana on his property. The record also establishes that he and his wife had sole and exclusive possession over the property. Further, there is nothing that indicates Defendant did anything to prevent his wife from .committing these crimes, and Defendant was in fact present during his wife's ongoing commission of these crimes.

Minn.Stat. § 609.05, subd. 1 (1990), provides:

A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Minn.Stat. 609.02, subd 9(3) (1990), provides:

"Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition, except as provided in clause (6), the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."

This court has stated that "[a]ctive participation in the overt act is not required for accomplice liability" and that "mere presence at the scene of the crime may be sufficient to sustain a conviction for aiding and abetting." *State v. Williams,* 415 N.W.2d 760, 761–62 (Minn.App.1987) (citing *State v. Parker,* 282 Minn. 343, 355–57, 164 N.W.2d 633, 641–42 (1969)). Nevertheless, aiding and abetting require criminal intent. *See* Minn.Stat. §§ 609.05, subd. 1; 609.02, subd. 9 (1990); *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981); *State v. Gruber,* 264 N.W.2d 812, 819 (Minn.1978); *Parker,* 282 Minn. at 356, 164 N.W.2d at 641.

In *Gruber,* 264 N.W.2d at 819, the supreme court underscored the intent requirement:

[A]lthough defendant was present at the scene of the crime, presence must be

shown beyond a reasonable doubt to have intentionally aided or promoted the crime which was committed.

Kessler is charged with third and fifth degree possession of a controlled substance and third and fifth degree sale of a controlled substance.

Minn.Stat. § 152.023, subds. 1(5) and 2(6), provide:

A person is guilty of controlled substance crime in the third degree if

\* \* \* \* \* \*

the person unlawfully sells one or more mixtures of a total weight of five kilograms or more containing marijuana or Tetrahydrocannabinols [or]

\* \* \* \* \* \*

the person unlawfully possesses one or more mixtures of a total weight of ten kilograms or more containing marijuana or Tetrahydrocannabinols.

Minn.Stat. § 152.025, subds. 1(1), 2(1), provide:

A person is guilty of controlled substance crime in the fifth degree if \* \* \* the person unlawfully sells one or more mixtures containing marijuana or Tetrahydrocannabinols, except a small amount of marijuana for no remuneration; or

\* \* \* \* \* \*

the person unlawfully possesses one or more mixtures containing a controlled substance classified in schedule I, II, III, or IV, except a small amount of marijuana.

For the purposes of Chapter 152, "sell" means "to sell, give away, barter, deliver, exchange, distribute or dispose of to another; or to offer or agree to do the same; or to manufacture." Minn.Stat. § 152.01, subd. 15a (1990). "Manufacture" "means and includes the production [and] cultivation," among other things. Minn.Stat. § 152.01, subd. 7 (1990).

## A. *Possession*

■ Kessler owns, possesses and controls his house. He admits awareness and knowledge of the contraband substance maintained at his house. He is responsible for the contents of his house. His awareness and knowledge of the marijuana in a house he owns, possesses and controls constitute probable cause to believe that he intentionally aided or promoted his wife's possession of marijuana. *See* Minn.Stat. § 152.028, subd. 1 (1990).[1]

In *Wiley* the state relied on the theory of constructive possession to establish possession of a controlled substance, because Wiley denied living on the premises. *Wiley*, 366 N.W.2d at 267–70. To establish constructive possession, the state must show

(a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that the defendant was at the time consciously exercising dominion and control over it.

*Id.* at 270. The court upheld Wiley's constructive possession of a controlled substance because the police found clothing of a size that would fit Wiley, letters and envelopes addressed to him at the premises, and a box with his name on it containing marijuana. *Id.*

This case differs because possession of the premises is not an issue, as it was in *Wiley*. Here, marijuana was found in common areas of the house and yard: for example, marijuana grew under grow lights in the basement and grew near the garage and dog kennel.

Kessler argues that the evidence was found in his wife's parts of the house. This argument is unsupported by the record. The police officers' reports, which

---

1. Minn.Stat. § 152.028, subd. 1 (1990), provides: "The presence of a controlled substance in open view in a room, other than a public place, under circumstances evincing an intent by one or more of the persons present to unlawfully mix, compound, package, or otherwise prepare for sale the controlled substance permits the fact finder to infer knowing possession of the controlled substance by each person in close proximity to the controlled substance when the controlled substance was found." (Emphasis added.)

are attached to the complaint, indicate that contraband was found in nonpersonal and nonprivate areas of the house. Although Kessler's actions may have been passive, probable cause exists to believe he aided and abetted his wife's possession of marijuana.

B. *Sale or Manufacture*

█ Aiding and abetting the sale or manufacture of a controlled substance presents, analytically, a different problem; we conclude that it requires some active participation to reach the requisite intent. Minnesota case law seems to illustrate a need for some active participation by an aider or abettor of "active" crimes.

In *Ulvinen*, 313 N.W.2d at 428, defendant's son murdered his wife in bed and dismembered her body in the bathroom. When her son told her of his intent to murder his wife, defendant responded, "it will be best." *Id.* Defendant, who lived with her son and his wife, took no active part in the murder or dismembering "but came upstairs to intercept the children, should they awake, and prevent them from going in the bathroom." *Id.* The Minnesota Supreme Court held that no evidence suggested that this remark had "any influence on her son's decision to kill his wife" and reversed her murder conviction. *Id.* This "passive approval" did not constitute criminal activity. *Id.*

In *Gruber*, 264 N.W.2d at 813, the defendant delivered a fully loaded gun to Aubol with knowledge that he would not hesitate to use it for illegal purposes. They went to a service station and Aubol shot a man after arguing with him. *Id.* Our supreme court held there was no showing that Gruber intentionally aided or promoted the crime of manslaughter committed in the heat of passion. *Id.* at 819. No evidence suggests Gruber gave the gun to Aubol with the intent or plan that it would be used to commit a serious crime. *Id.*

Both *Gruber* and *Ulvinen* suggest that, to show intent, aiding and abetting homicide requires an affirmative action. The complaint and its attachment make no claim that Kessler took any affirmative action which evinces intent to manufacture or sell a controlled substance. There is no evidence or allegation that he cultivated the growing of the marijuana. While knowledge and acquiescence are pertinent to show his possession, we think it is clear from the supreme court's holdings in *Ulvinen* and *Gruber* that some active participation is required to aid and abet an "active" crime.

DECISION

We reverse the trial court's order suppressing the evidence. The clerical error on the search warrant did not, under the circumstances of this case, create a reasonable risk that the wrong premises would be searched. Evidence obtained during the search and statements made by Kessler during the search are admissible.

Distinguishing between active and passive crimes, we reverse the trial court's order finding probable cause to believe Kessler aided and abetted fifth and third degree sale of a controlled substance. We affirm the trial court's order finding probable cause to believe that Kessler aided and abetted third and fifth degree possession of a controlled substance. The trial court shall dismiss the charges of third and fifth degree sale of a controlled substance.

Affirmed in part and reversed in part.