*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2125**

State of Minnesota,
Respondent,

vs.

Andre Thomas Johnson,
Appellant.

**Filed December 14, 2015
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-12-9488

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his convictions of second-degree murder and second-degree assault, arguing that his trial counsel's failure to challenge a warrant that authorized the search of his property constitutes ineffective assistance of counsel. Appellant also challenges his sentence, arguing that the district court erred by failing to sentence the offenses in the order in which they occurred and that the state failed to introduce evidence at trial necessary to trigger a mandatory-minimum sentence under Minn. Stat. § 609.11, subd. 5(a) (2010). Because appellant's trial counsel was not ineffective, we affirm appellant's convictions. But because the district court did not sentence the offenses in the order in which they occurred, we reverse appellant's sentence and remand for resentencing on all convictions, without addressing his argument regarding section 609.11.

## FACTS

On the night of July 6, 2012, R.B., a heroin dealer, and his acquaintance D.V. were leaving R.B.'s Saint Paul home when a man with a rifle approached them and ordered them back inside the house. Once inside, the man pointed the gun at T.C., who was inside the house. T.C. ran out the front door. The man demanded drugs and money from R.B. R.B. gave the man some money from his pocket and some heroin. When R.B. failed to produce more money and drugs, the man shot R.B. twice, shot D.V. once in his leg, and left the home. R.B. died from his wounds.

During the investigation of R.B.'s murder, Saint Paul police identified appellant Andre Thomas Johnson as a suspect. Saint Paul Police Sergeant Sheila Lambie applied for a warrant to search Johnson's residence in Ironton, Minnesota. Sergeant Lambie drafted the search-warrant application, the supporting affidavit, and the proposed search warrant. The supporting affidavit provided the following facts in support of probable cause. Officers learned that R.B. had been selling narcotics and that one of his associates was T.H., who lived next door. An officer interviewed T.H., and T.H. provided his home and cell phone numbers. Officers obtained T.H.'s home phone records and learned that just prior to and shortly after the murder, there were calls between T.H.'s home phone and a number listed to a person named J.J. Sergeant Lambie learned that Johnson is T.H.'s nephew or cousin, and that J.J. is Johnson's mother. Johnson was convicted of aggravated assault in 1997 and had just been released from prison. Johnson's cell phone records revealed that Johnson was in Saint Paul continuously from July 6 until July 7. Johnson's parole officer told officers that Johnson was allowed to travel to the Twin Cities, but he was not allowed to spend the night.

When Sergeant Lambie interviewed T.H., he denied that he knew Johnson and that he had a relative by that name. But T.H.'s wife told Sergeant Lambie that Johnson is the son of T.H.'s cousin, J.J., and that Johnson and J.J. were at her house with T.H. on the day of the murder. T.H.'s wife told the police that T.H. was in the front yard with the cordless house phone right after the murder occurred. A confidential reliable informant (CRI) told the police that T.H. stated, "[I]t wasn't supposed to go down that way, I got all these mother f-ckers mixed up on that, nobody was supposed to get hurt, supposed to be

3

in and out." The CRI told the police that T.H. said the murder was supposed to be a robbery.

The surviving victim, D.V., and another witness to the murder described the suspect as a black male who was wearing a wig, which was "stringy and fake looking." The suspect wore a skull cap over the wig, and the hair hung out of the bottom and sides of the skull cap. The suspect also wore a black jacket or hoodie with red stripes down the arms.

The search-warrant application requested to search Johnson's address, including "any garage or shed in relation to this address," for firearms, ammunition, a wig or fake hair, a skull cap, and a black jacket or hoodie with red strips on the arms. However, when drafting the search warrant, Sergeant Lambie mistakenly inserted the list of items to be seized in the spot designated for identification of the place to be searched. As a result, the search warrant did not describe the place to be searched. Sergeant Lambie presented the search-warrant application, the supporting affidavit, and the search warrant, which were paper-clipped together, to a district court judge, who read and signed the supporting affidavit and the search warrant, noting the date and time of his signature on both documents.

After obtaining the search warrant, Sergeant Lambie briefed the tactical team that would eventually execute the warrant. She provided the team with the warrant and the supporting affidavit, she showed the team photographs of the property's layout, and she discussed with the team the buildings on the property. The tactical team found a wig and shell casings during the ensuing search of Johnson's property. A ballistics analyst

concluded that a casing found on Johnson's property was fired from the same gun as casings found at the crime scene.

Respondent State of Minnesota charged Johnson with two counts of second-degree murder for R.B.'s death, one count of second-degree assault against D.V., and one count of second-degree assault against T.C. The case was tried to a jury, and the jury found Johnson guilty of all charges. The district court sentenced Johnson to serve 450 months in prison for one count of second-degree murder. Next, the district court sentenced Johnson to serve 60 months in prison for the assault against D.V., consecutively to the 450-month murder sentence. Lastly, the district court sentenced Johnson to serve 60 months for the assault against T.C., concurrently with the other assault sentence.

Johnson appealed, and this court granted his request to stay the appeal and remand for postconviction proceedings. Johnson petitioned for postconviction relief, arguing that his trial counsel was ineffective because he failed to challenge the search warrant for lack of probable cause and lack of specificity regarding the place to be searched. The postconviction court held a hearing on the petition and heard testimony from Johnson's trial counsel and from Sergeant Lambie. The postconviction court denied Johnson's petition, concluding that the search warrant was based on sufficient probable cause, its failure to describe the place to be searched was cured by the attached supporting affidavit, and that Johnson's trial counsel was not ineffective. This court dissolved the stay and reinstated Johnson's appeal.

## D E C I S I O N

## I.

"[Appellate courts] review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact." *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984).

Johnson contends that his trial counsel's failure to challenge the search warrant fell below an objective standard of reasonableness because the search warrant was not supported by probable cause. The United States and Minnesota Constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached magistrate after a finding of probable cause. Minn. Stat. § 626.08 (2012); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999).

"When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Instead, "great deference must be given to the issuing [magistrate's] determination of probable cause." *State v. Valento*,

6

405 N.W.2d 914, 918 (Minn. App. 1987). When reviewing a decision to issue a search warrant, we limit our review to whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). To determine whether the issuing magistrate had a substantial basis for finding probable cause, we look to the totality of the circumstances. *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

When reviewing the sufficiency of a search-warrant affidavit under the totality-of-the-circumstances test, "courts must be careful not to review each component of the affidavit in isolation." *Id*. "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004). "Furthermore, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *Wiley*, 366 N.W.2d at 268 (quotation omitted).

Johnson argues that the supporting affidavit "offered no explanation as to how [his] visit to the metro and his telephone conversations with his mother linked him to the shooting." We disagree. The affidavit alleged that Johnson was in Saint Paul the night of the murder and remained there until the next day; that both Johnson and his mother, J.J.,

7

were with T.H. at T.H.'s house next door to the victim's house prior to the murder; that there were phone calls between T.H.'s home phone and J.J.'s phone prior to and after the murder; that T.H. was aware of or involved with the planning of the robbery and stated that "nobody was supposed to get hurt"; and that T.H. denied that he knew Johnson or anyone with Johnson's name, suggesting that he was trying to hide Johnson's involvement in the robbery and murder. Moreover, the affidavit alleged that Johnson had recently been released from prison for a 1997 aggravated-assault conviction. When viewed together, under the totality of the circumstances, the affidavit established a fair probability that Johnson was involved in the robbery and R.B.'s murder.

Johnson also argues that the affidavit "failed to provide specific information to establish why, even if [he] was the shooter, he would have brought incriminating evidence of the crime from St. Paul to his home in Ironton."

> Probable cause not only requires that the evidence sought likely exists, but also that there is a fair probability that the evidence will be found at the specific site to be searched. A sufficient nexus must be established between the evidence sought and the place to be searched. However, direct observation of evidence of a crime at the place to be searched is not required. A nexus may be inferred from the totality of the circumstances.

*Yarbrough*, 841 N.W.2d at 622 (citations and quotation omitted). We consider "the type of crime involved, the nature of the items sought, the extent of an opportunity for concealment, and reasonable assumptions about where a suspect would likely keep that evidence." *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004). Depending on the circumstances, "it is reasonable to infer that

8

[gun] evidence would be kept at a defendant's residence, thereby satisfying the nexus requirement." *Yarbrough*, 841 N.W.2d at 623. In this case, it was reasonable to infer that Johnson—a murder suspect—would keep the murder weapon, ammunition, clothes, and disguise (i.e., the wig) at his home, which was far from the crime scene. *See State v. Pierce*, 358 N.W.2d 672, 674 (Minn. 1984) (stating that "the normal place one would keep extra bullets for his gun and papers showing ownership of his gun would also be at his residence").

Johnson also argues that the search warrant was issued nearly five months after the crime, suggesting that the information establishing probable cause was stale. But the time limit for obtaining a warrant is flexible and determined by the circumstances of each case. *State v. Jannetta*, 355 N.W.2d 189, 193 (Minn. App. 1984), *review denied* (Minn. Jan. 14, 1985). "Factors relating to staleness include whether there is any indication of ongoing criminal activity, . . . whether the property sought is easily disposable or transferable, and whether the items sought are of enduring utility." *State v. Souto*, 578 N.W.2d 744, 750 (Minn. 1988). Information supporting probable cause may not be stale "even after the passage of several months where the items sought are of enduring utility to their taker." *State v. DeWald*, 463 N.W.2d 741, 746 (Minn. 1990) (quotation omitted). In this case, only five months passed between the murder and the search, and the objects of the search—a firearm, clothing, and a wig—have an enduring utility.

In sum, the search-warrant affidavit supports the issuing judge's practical, common sense determination that there was a fair probability that contraband or evidence of a crime would be found on Johnson's property. The issuing judge therefore had a

substantial basis for concluding that the constitutional probable-cause standard was satisfied.

Johnson next contends that his trial counsel's failure to challenge the search warrant fell below an objective standard of reasonableness because the warrant lacked specificity regarding the place to be searched. The United States and Minnesota Constitutions require that search warrants particularly describe the place to be searched. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The main purpose of the requirement is to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate." *State v. Gonzales*, 314 N.W.2d 825, 827 (Minn. 1982) (quotation omitted).

As support for his position, Johnson relies on caselaw regarding when an affidavit may be used to cure a search warrant that lacks particularity under the incorporation doctrine. That caselaw provides that "the affidavit and search warrant must be physically connected so that they constitute one document" and that "the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference." *State v. Herbst*, 395 N.W.2d 399, 404 (Minn. App. 1986) (quotation omitted); *see also State v. Balduc*, 514 N.W.2d 607, 610 (Minn. App. 1994) (stating that "an affidavit may be used to cure a deficient warrant if the affidavit and warrant are physically attached to one another and the warrant refers to the affidavit and incorporates it by reference" (quotation omitted)); *State v. Bonynge*, 450 N.W.2d 331, 335 (Minn. App. 1990) (stating that "an affidavit may be used to cure a deficient warrant if the

affidavit and warrant are physically attached to one another and the warrant refers to the affidavit and incorporates it by reference").

Johnson argues that the state failed to establish that the search warrant and supporting affidavit in this case were physically connected when the warrant was executed or that the warrant expressly refers to the affidavit and uses suitable words to incorporate it by reference. But the caselaw on which Johnson relies uses the incorporation doctrine to determine whether an affidavit cures a warrant that fails to particularly describe the *things* to be seized, as opposed to the place to be searched. *See Herbst*, 395 N.W.2d at 403 (stating that "[t]he search warrant issued for appellant's home did not contain a particular description of the things to be seized"); *see also Balduc*, 514 N.W.2d at 610 (addressing a search warrant that "contains no description of the things to be seized"); *Bonynge*, 450 N.W.2d at 334, 336 (addressing whether the warrant was "of insufficient particularity to authorize seizure of . . . videotapes").

When determining whether a warrant is constitutionally invalid because it fails to particularly describe the *place* to be searched, this court follows *Gonzales*, which provides:

> Not all errors in the search warrant's description of the premises to be searched will invalidate a search pursuant to the warrant. The test for determining the sufficiency of the description of the premises is whether the description is sufficient so that the executing officer can locate and identify the premises with reasonable effort with no reasonable probability that other premises might be mistakenly searched.

*Gonzales*, 314 N.W.2d at 827 (quotation and alterations omitted).

In *Gonzales*, the police obtained a warrant to search the defendant's house at 41 Wood Street. *Id.* When officers arrived to execute the warrant, they learned that the defendant's address actually was 41 Delos Street. *Id.* The supreme court concluded that the warrant was not constitutionally defective because "there was no reasonable probability [of] searching the wrong house," reasoning that the officer who prepared the warrant application knew which house was the defendant's house, the house had the number 41 on it, the house was on a corner bounded by Wood Street on one side, and there were no other houses bearing the number 41 in the neighborhood. *Id.*

Similarly, in *State v. Kessler*, an officer applied for a warrant to search the defendant's home and prepared a supporting affidavit that described the premises to be searched as 1521 216th Street North, but the defendant lived at 5821 216th Street North. 470 N.W.2d 536, 537 (Minn. App. 1991). This court concluded that the warrant was not constitutionally defective, reasoning that the officer who applied for and executed the warrant had previously seen the defendant's house and had later flown over the house with another officer in a State Patrol airplane and observed that the property layout conformed to an informant's diagram. *Id*. at 539. This court noted that there was

> no indication of subterfuge or intent to deceive the court or [the defendant]. No home was mistakenly searched. [The defendant] suffers no prejudice from the wrong address on the warrant. The attachments to the complaint establish that the officers executing the warrant went directly to the house that [the officers] observed from the air and that the informant had shown [the affiant] on the ground. Regardless of the mistaken address in the warrant, they did in fact execute the

12

> warrant on the house meant to be searched. Such a clerical error, resulting in no prejudice, is not reversible error.

*Id*.

As in *Gonzales* and *Kessler*, the tactical team that executed the warrant in this case was provided a description sufficient to locate and identify the correct premises to be searched and there was no reasonable probability that other premises might be mistakenly searched. Sergeant Lambie prepared the search-warrant application and supporting affidavit, briefed the tactical team that executed the warrant, provided the team with the warrant and the supporting affidavit—which contained Johnson's address—and showed the team photographs of the places to be searched. Sergeant Lambie was present when the tactical team prepared to execute the warrant, was blocks away as the team entered Johnson's property, and drove to the scene after the premises were secured for the search. In sum, the tactical team was provided Johnson's address and searched Johnson's property even though the search warrant did not contain Johnson's address. The omission of Johnson's address from the face of the warrant created no reasonable probability that another property might be mistakenly searched.

Johnson dismisses *Gonzales* and *Kessler*, arguing that "this is not a case in which the search warrant contained a mistaken address," but rather "a case in which the place to be searched was not described whatsoever." He further argues that "there is no indication that the issuing judge intended to allow the police to search all the places Sergeant Lambie had asked to search in the warrant application." We are not persuaded. First, whether an alleged defect results from an incorrectly stated address or an omitted address,

13

the alleged constitutional inadequacy is the same: failure to particularly describe the place to be searched. The mistaken address cases are therefore relevant. Second, the issuing magistrate signed and dated both the search warrant and the supporting affidavit, indicating that he intended to allow the police to search all of the places in the warrant application. Thus, the police did not engage in a constitutionally impermissible exploratory search. They searched the locations indisputably authorized by the issuing magistrate. We therefore hold that the clerical error in this case does not constitutionally invalidate the search warrant or the search.

Because the search warrant was constitutionally valid, Johnson has failed to show that his trial counsel's decision not to challenge the warrant was objectively unreasonable or that the result of the proceeding would have been different if he had challenged the warrant. We therefore affirm the postconviction court's denial of his petition for relief.

**II.**

Johnson contends that his "sentences must be reversed because the district court sentenced him on his second-degree murder conviction before sentencing him on his second-degree assault convictions even though the latter offenses were completed before the murder." Sentencing decisions are reviewed for an abuse of discretion. *State v. Ford*, 539 N.W.2d 214, 229 (Minn. 1995).

Johnson argues that because the victim's death is an element of second-degree murder and the evidence established that R.B. did not die until after Johnson pointed the rifle at T.C. and shot D.V., he committed the assaults before the murder. Johnson therefore argues that the district court was required to sentence him for the assaults before

14

the murder. Under the Minnesota Sentencing Guidelines, "[w]hen multiple current offenses are sentenced on the same day before the same judge, sentencing shall occur in the order in which the offenses occurred." Minn. Sent. Guidelines cmt. 2.B.105 (Supp. 2011); *see also State v. Anderson*, 361 N.W.2d 896, 898 (Minn. App. 1985) ("When multiple current offenses are sentenced on the same day, sentencing should occur in the order in which the offenses occurred."). A defendant is properly sentenced first for the offense he completes first. *See State v. Anderson*, 345 N.W.2d 764, 766 (Minn. 1984) (holding that when a burglary was completed before criminal damage to property, burglary was properly sentenced first).

The district court should have sentenced Johnson in accordance with that principle. The state concedes that "justice requires that the sentences be imposed correctly" and that remand for resentencing is appropriate. We agree. We therefore reverse Johnson's sentence and remand for the district court to resentence the offenses in the order in which they occurred.

### III.

Johnson also contends that his "60-month consecutive sentence must be reversed because the state failed to introduce any evidence at [his] trial that would allow the jury to find beyond a reasonable doubt that [he] had a prior qualifying offense involving a firearm to trigger the mandatory-minimum sentencing requirement in Minn. Stat. § 609.11, subd. 5(a)." The district court did not articulate the basis for the 60-month sentence. Because we reverse Johnson's sentence and remand for the district court to

15

resentence all of Johnson's convictions on other grounds, we do not address Johnson's remaining challenge to his sentence.

**Affirmed in part, reversed in part, and remanded.**