STATE of Minnesota, Respondent,

v.

Earthia WILEY, Appellant.

No. CX–83–1672.

Supreme Court of Minnesota.

April 19, 1985.

C. Paul Jones, Public Defender, Brian I. Rademacher, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, R. Michael Richardson, Asst. Hennepin County Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Appellant was found guilty of possession of a Schedule I controlled substance by the Hennepin County District Court, in violation of Minn.Stat. § 152.09, subd. 1(2) (1984). The prosecution arose out of the seizure at appellant's residence, pursuant to a search warrant, of two boxes containing loose, suspected marijuana. Appellant moved to suppress this evidence on the ground that the affidavit filed in support of the search warrant did not establish probable cause to search the residence. Appellant also moved for disclosure of the identity of the informant who provided the information contained in the affidavit. Appellant appealed the denial of these motions to

the Court of Appeals, claiming in addition that the evidence was insufficient to support the trial court's findings that the seized substances were marijuana and that appellant constructively possessed the substances. The Court of Appeals, sitting en banc, unanimously found the evidence sufficient to support the verdict and unanimously affirmed the trial court's denial of appellant's motion to disclose the identity of the informant. The Court of Appeals divided, however, on whether the affidavit in support of the application for the search warrant was sufficient to establish probable cause to search, affirming the trial court by virtue of even division of the en banc panel. 348 N.W.2d 86. We affirm.

On January 24, 1983, Lieutenant Tidgwell of the Minneapolis Police Department applied for and obtained a warrant to search a residence at 1501 Upton Avenue North for stolen guns and narcotics. Tidgwell and other officers went to 1501 Upton and executed the warrant. When they arrived at the house, appellant and another person were present.

Officer Brademan, an officer in the narcotics department of the Minneapolis Police Department, assisted in the search of 1501 Upton. Because he had special training in the identification of controlled substances, Brademan was present specifically to search for narcotic drugs. In a bedroom labeled "2" on the north side of the house, Brademan discovered and seized approximately 6 ounces of a green, leafy substance suspected to be marijuana: about 5.5 ounces were found in a large, tinfoil lined box, and an additional .5 ounce was found in a syringe box, dated August 6, 1981, which had appellant's name and a Hennepin County Medical Center label on it. The large box also contained a smaller box, which had appellant's name and the date April 17, 1982, written on it. Brademan also found men's clothing in the closet of a size that would fit appellant and letters and envelopes addressed to appellant at that address. There were also letters addressed to several other people at that location.

Appellant, after receiving a *Miranda* warning and saying he wanted to talk, told Brademan that he lived at 1501 Upton and worked there for New World Advocates, which operates out of 1501 Upton. He denied occupying the bedroom in which the suspected marijuana was found and stated that others occupied the dwelling at various times. Later, appellant denied living at 1501 Upton. Robert Piazza, a detective for the Minneapolis Police, testified that in August of 1982, he had been assigned a robbery case in which Wiley was the victim. At that time, Wiley said he lived at 1501 Upton. Moreover, in October 1982, Wiley had written a letter to the chief of police that indicated his address was 1501 Upton.

Dawn Speier, a public health chemist for the City of Minneapolis, examined the seized substances to determine whether the material was marijuana. Speier, an experienced analytical chemist, has had specific training in the identification of controlled substances. She performed a microscopic examination of the substances and a thin-layer chromatography test.

Microscopic examination is used to determine if the plant matter is of the species cannabis. In looking at the substance, Speier saw three kinds of hairs. One, a cystolis, had a small cell of calcium carbonate at its base. Speier determined the presence of calcium carbonate by placing acid on the substance and observing that it bubbled. She also observed long, nonglandular hairs and very long hairs grouped closely together on the plant. These characteristics indicated that the substance was marijuana. Three identifying characteristics of marijuana—palmate leaves, absence of buds where leaflets join the stem of the plant, and serrated leaf edges—could not be checked because Speier lacked a full leaf of the plant and was examining crushed material.

Thin-layer chromatography was used to identify the presence of tetrahydrocannabinol (THC), a Schedule I controlled substance, in the material seized. To perform this test, Speier dissolved standard THC and the suspected marijuana in solvents.

The resulting solutions were spotted onto a thin-layer plate and allowed to develop. The position of the spots from the two samples of suspected marijuana was then compared to the position of the spot from the THC standard material. Speier found that the samples matched the known THC standard.

The trial court found appellant guilty of possession of marijuana.

1. Appellant asserts that the search warrant authorizing the search of 1501 Upton was unsupported by probable cause. The affidavit in support of the application for the search warrant, in pertinent part, stated that:

> On 1–24–83 the CRI came into the Organized Crime Office and told me that hd [sic] been at 1501 Upton Ave. N. on 1–22–83 at 2330 hrs. At that time in the basement he had seen 15–20 handguns and rifles in a cardboard box that the occupant of that dwelling stated were stolen. He also saw narcotics consisting of marijuana and cocaine at the same time. The CRI has been at this dwelling on numerous occasions and has seen stolen property there consisting of guns stereos, TV's and other misc. items. The occupant is described as a Black Male, late 40's, close to 7 ft. tall, about 300 pounds and he lives there with a white female named Clare. I checked the listing in the cross directory for 1501 Upton Ave. N. and it lists to Clare Bettymae Masanz. I also checked a 1973 Mercedes in front of that address that the CRI indicated is driven by the black male and the white female and I obtained the license number of DMJ 234. This vehicle list to CLARE BETTYMAE MᴀSANZ, 1501 Upton Ave. N. and is a 4 door blue in color. The CRI indicates that there is also a white male, name unk. who is temporarily staying in the basement where the guns are located. The white male is suppose to help the black [male] do income tax statements for the neighborhood people who want their services.
> * * *

It should be noted that the CRI has been used over several years successfully. It should also be noted that the black man that has the guns at 1501 Upton Ave. N. admitted to the CRI that the guns and other objects in his home are stolen.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court ruled that the presence of probable cause should be determined under a "totality of the circumstances" test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. at 2332. A magistrate's determination of probable cause should be "paid great deference by reviewing courts" and a reviewing court should not review that determination *de novo.* The fourth amendment requires only that the magistrate had a "substantial basis for * * * conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at 236, 103 S.Ct. at 2331, quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). In reviewing the sufficiency of an affidavit under the totality of the circumstances test, courts must be careful not to review each component of the affidavit in isolation. Even if each component is judged unsubstantial, the components viewed together may reveal in the informant's tip "an internal coherence that [gives] weight to the whole." *Massachusetts v. Upton,* —— U.S. ——, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984). Furthermore, the resolution of doubtful or marginal cases should be "largely determined by the preference to be accorded warrants." *Id.,* quoting *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In light of these principles, we find the affidavit sufficient to establish probable cause. The affidavit stated that the informant had been at 1501 Upton several times and had observed stolen guns and narcotics on the premises only 2 days before the warrant was issued. Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge. *See State v. Yahnke,* 336 N.W.2d 299 (Minn.1983); *State v. Buchholtz,* 295 N.W.2d 629 (Minn. 1980).

The affidavit also stated that the informant "has been used over several years successfully." Interpreted in a practical, commonsense manner, this language indicates that the informant had provided accurate information to the police in the past. The magistrate, presented with this language, would know that a police officer who had used an informant in the past "successfully" would have found the informant to have provided reliable information.[1] This information provided the magistrate with reason to credit the informant's story. Finally, we note that the police corroborated the informant's statement that a woman named Clare resided at 1501 Upton and parked a 1973 Mercedes in front of that address. While not corroboration of a key detail, the corroboration did lend credence to the informant's tip. We conclude that the search warrant was supported by probable cause.[2]

2. Appellant challenges the sufficiency of the evidence showing constructive possession and identifying the substances seized as marijuana. In reviewing the sufficiency of the evidence in criminal cases, this court rigorously examines the record to determine whether the evidence, viewed in the light most favorable to the finding of guilt, was sufficient to allow the trial court to find the defendant guilty. *State v. Cox,* 278 N.W.2d 62, 65 (Minn.1979); *State v. Mytych,* 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972).

The evidence amply supports the trial court's determination that the tests used to identify the substances provided the chemist a sufficient basis to conclude that the seized substances were marijuana. Although the chemist was unable to determine the presence or absence of some characteristics of the marijuana plant because she did not have a complete leaf of the plant to examine, of the characteristics she could determine, all were positive for marijuana. Appellant was unable to cast serious doubt on the accuracy of the thin-layer chromatography test used to establish the presence of THC in the substances. The tests, combined with the chemist's experience and special training in the identification of controlled substances, provide sufficient support for the trial court's finding that the substances seized were marijuana.

1. We note that we prefer more specific language than "used successfully" to establish an informant's credibility in an affidavit for a search warrant. Information regarding the past accuracy rate of the informant and the results of prior searches based on the informant's tips, such as whether they led to arrests or convictions, should be provided to the magistrate.

2. Because we have found that the search warrant was supported by probable cause, we need not reach exclusion issues raised by the parties under *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Minn. Stat. § 626.21 (1984). The statute provides that:

**RETURN OF PROPERTY AND SUP-PRESSION OF EVIDENCE.**

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized or the municipal court having jurisdiction of the substantive offense for the return of the property and to suppress the use, as evidence, of anything so obtained on the ground that (1) the property was illegally seized, or (2) the property was illegally seized without warrant, or (3) the warrant is insufficient on its face, or (4) the property seized is not that described in the warrant, or (5) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (6) the warrant was illegally executed, or (7) the warrant was improvidently issued. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention, and it shall not be admissible in evidence at any hearing or trial. * * *

■ The evidence was also sufficient to establish that appellant constructively possessed the marijuana. In order to prove constructive possession of the marijuana, the state must show

(a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.

*State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). The evidence shows that other persons had access to the house, and in fact lived there, and that bedroom "2" was not under appellant's exclusive control. The state must therefore show that there is a strong probability that appellant at the time consciously exercised dominion and control over the substances seized.

■ The police introduced evidence that appellant resided at 1501 Upton, and appellant admitted residing there to police on the day of the search. Police observed in the room clothing of a size that would fit appellant, as well as letters and envelopes addressed to appellant at 1501 Upton. The box containing .5 ounce of marijuana had appellant's name on it. Brademan, the officer who seized the marijuana, testified that the box containing 5.5 ounces had a smaller box inside it with appellant's name on it. We find this evidence sufficient to establish that appellant constructively possessed the marijuana. *See State v. Colsch*, 284 N.W.2d 839 (Minn.1979) (defendant constructively possessed controlled substances found in a bedroom containing male clothing, as well as papers and a checkbook bearing defendant's name); *State v. Simon*, 275 N.W.2d 51 (Minn.1979) (defendant constructively possessed narcotics found, along with a passport, in his bedroom in a mobile home defendant jointly leased with a friend); *State v. Mollberg*, 310 Minn. 376, 246 N.W.2d 463 (1976) (defendant constructively possessed marijuana found in bedroom along with letters addressed to defendant and the front end of defendant's motorcycle); *State v. LaBarre*, 292 Minn. 228, 195 N.W.2d 435 (1972) (defendant constructively possessed, either singly or with others, narcotics found in bedroom which contained papers identifying defendant).

3. Finally, appellant contends that the trial court erred in denying his motion to compel disclosure of the informant's identity because the informant's testimony would have been highly relevant to the determination of the possession issue. Appellant wished to examine the informant as to the number and appearance of the occupants of 1501 Upton, the rooms these people occupied, and who he may have seen in possession of the marijuana. Appellant, however, made no showing that the informant was the only available witness as to living arrangements at 1501 Upton. There was evidence that many people resided at 1501 Upton and that a business, New World Advocates, was run out of the residence. Other occupants, or visitors familiar with the residence, could have been called to testify on the possession issue. *See United States v. Shursen*, 649 F.2d 1250, 1254 (8th Cir.1981) (trial court properly denied request to disclose informant's identity so that informant could testify as to the nature of an illegal gambling business when the evidence showed that up to 20 other participants in the gambling could have been called to testify on this issue).

■ When an informant is a mere transmitter of information and not a competent witness to or active participant in the crime, his name need not be disclosed. *State v. Purdy*, 278 Minn. 133, 145, 153 N.W.2d 254, 262 (1967). *See State v. Houle*, 257 N.W.2d 320, 323 (Minn.1977) (upholding trial court's refusal to disclose the identity of the informant who was a transmitter of information to the police but not a participant or observer in the crime itself). Because the informant did not participate in the crime, and because appellant could have called other witnesses to testify on the issue of whether appellant resided in

bedroom "2" or possessed the marijuana, the trial court did not err in refusing to disclose the identity of the informant.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. Even though, as a reviewing court, we must pay great deference to the magistrate's determination of probable cause, *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 257 (1983), there must still be sufficient, reliable, underlying facts from which the magistrate can make an independent determination of probable cause, not a mere ratification of the conclusions of others. Id. at 238–39, 103 S.Ct. at 2332. "[T]he elements under the [*Aguilar-Spinelli*[1]] test—the informant's credibility, reliability and basis of knowledge * * * still bear on the issue of whether there is probable cause to believe that evidence is located in a particular place." *State v. Yahnke*, 336 N.W.2d 299, 300 (Minn.1983). As to the reliability of the "confidential reliable informant" in the case before us, the magistrate had the mere averment of Lieutenant Tidgwell that the informant "had been used over several years successfully." A magistrate could only speculate as to what this statement means. There is not even the additional fact provided in *United States v. Fleming*, 566 F.2d 623, 624 (8th Cir.1977), that the information given by the informant in the past "has always proven correct as to the illegal activity informed on." Without additional, meaningful corroboration, Tidgwell's conclusory statement on reliability is insufficient. As in *United States v. Schmidt*, 662 F.2d 498 (8th Cir. 1981) and in *United States v. Skramstad*, 649 F.2d 1259, 1262 (8th Cir.1981) there is no indication that the information supplied by the informant in the past nor the corroboration provided by the affiant in the present refers expressly to incriminating or illegal activities. The corroboration here that a woman named Clare lived in the house to be searched and owned the Mer-

cedes car parked in front of that house is innocent and irrelevant information. Nor does the totality of the circumstances set forth in the affidavit adequately establish the reliability of the informant. The magistrate had insufficient information, apart from the conclusory statement of the police officer as to the reliability of the informant, from which to determine independently that probable cause existed to search 1501 Upton Avenue North. The evidence seized in that search should have been suppressed because the search warrant was improperly issued. Minn. Const. Art. 1 § 10; Minn.Stat. § 626.21 (1984).

---

1. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).