*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0849**

State of Minnesota,
Appellant,

vs.

Carliss David-Lee Johnson,
Respondent.

**Filed October 14, 2014
Reversed and remanded
Hudson, Judge**

Hennepin County District Court
File No. 27-CR-13-32528

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Mary Moriarty, Fourth Judicial District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Hudson, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

The state challenges the district court's order suppressing evidence recovered from a search of respondent's apartment, arguing that the information in the search-warrant

application established probable cause for the search. Because the totality of the circumstances establishes that the information contained in the application was sufficient to provide probable cause, we reverse and remand for additional proceedings.

**FACTS**

The district court issued a warrant authorizing a search of an apartment at 215 65th Avenue North in Brooklyn Center for illegal narcotics and related material. An affidavit supporting the warrant application alleged probable cause based, in part, on information given to Minneapolis police from a cooperating defendant (CD) about a person known as "Dave," who conducted illegal narcotics sales. The CD provided a physical description of Dave, a cellular phone number, and descriptions of three vehicles that Dave allegedly used to facilitate drug transactions, including a 1985 blue Cutlass with chrome wheels and a 2005 gray Monte Carlo. The CD told a police officer that Dave sold and stores narcotics at a single-family dwelling on Aldrich Avenue North in Minneapolis and kept narcotics and cash at a multi-unit apartment building at 215 65th Avenue North in Brooklyn Center. The CD stated that Dave's apartment was on the top floor in the northwest corner of that apartment building. The CD also stated that Dave was a gang member and had been observed with a handgun with a high-capacity magazine for protection because he had previously been shot in connection with gang activity.

The officer reviewed Minneapolis police reports and discovered that, about a year earlier, a theft had been reported from an address on Colfax Avenue South using the cellular telephone number provided by the CD as a contact number. Respondent Carliss David-Lee Johnson was the listed victim. Police records also indicated that respondent

2

had been a victim in a shooting in north Minneapolis in 2004. The officer showed a photo of respondent to the CD, who positively identified respondent as Dave.

The officer then reviewed additional Minneapolis police reports, which showed respondent's 2013 arrest for a driving-related offense when he was driving a 1983 blue Cutlass. The officer also noted that another officer had recently seen respondent driving a 2006 gray Monte Carlo. Both vehicles were registered to T.D., whose address was listed as the same Colfax Avenue South address from which respondent reported the earlier theft. The officer confirmed that T.D. lived in a certain apartment at that address and had a boyfriend who had stayed with her in the past. During surveillance, the officer observed the Monte Carlo parked in front of the Colfax Avenue building.

The officer then contacted a confidential reliable informant (CRI). The CRI also knew respondent by the name of Dave and stated that he sold crack cocaine and drove a silver Monte Carlo and a blue Buick with chrome wheels. The officer arranged for the CRI to participate in a controlled buy, in which the CRI purchased crack cocaine from respondent at the residence on Aldrich Avenue North. Respondent was seen driving away from that location in a 2006 Monte Carlo.

The officer then spoke to the property manager at the apartment at 215 65th Avenue North in Brooklyn Center and obtained the rent rolls, which showed that respondent leased an apartment at that address. He arranged for a Bloomington police officer to conduct a K-9 drug sniff at both the 65th Avenue North and Colfax Avenue South locations. The K-9 alerted to the presence of narcotics after sniffing the door seams in front of both respondent's apartment on 65th Avenue North and T.D.'s

3

apartment on Colfax Avenue South. Officers entered the 65th Avenue North apartment pursuant to the search warrant and recovered approximately 60.5 grams of a substance that later tested positive for marijuana.

The state charged respondent with fifth-degree controlled substance crime in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012), for his possession of the marijuana. Respondent moved to suppress evidence resulting from the search, arguing that the warrant was not based on probable cause to search the apartment and was invalid on its face. The district court granted the motion, concluding that the warrant application did not establish probable cause for the search because the information given by the CD was not reliable and because the controlled buy did not occur in the target residence or its vicinity. This appeal follows.

## D E C I S I O N

If the state appeals a pretrial suppression order, the state "must clearly and unequivocally show both that the trial court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quoting *State v. Zanter*, 535 N.W.2d 624, 630 (Minn. 1995)); Minn. R. Crim. P. 28.04, subd. 2(1). Respondent does not dispute that the district court's order suppressing the drug evidence had a critical impact on the state's case against respondent. We, likewise, conclude that the critical-impact requirement is met. When a suppression order is challenged on appeal, this court independently reviews the facts and the law to determine whether the district court erred

by suppressing or refusing to suppress the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999).

Both the United States and Minnesota Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Before searching a residence, unless an exception applies, police must obtain a valid warrant issued by a neutral and detached magistrate. *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). To be valid, a warrant must be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. In determining whether a search warrant is supported by probable cause, a court applies a totality-of-the-circumstances test, making "a practical commonsense decision whether, given all the circumstances [presented] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Zanter*, 535 N.W.2d at 633 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). A court gives great deference to an issuing magistrate's determination of probable cause to issue a search warrant. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). A reviewing court must "simply . . . ensure that the issuing judge had a substantial basis for concluding that probable cause existed." *Zanter*, 535 N.W.2d at 633 (quotation omitted). "Doubtful or marginal cases should be largely determined by the deference to be accorded to warrants." *State v. Miller*, 666 N.W.2d 703, 712 (Minn. 2003) (quotation omitted).

When considering whether the tip of a confidential, but not anonymous, informant provides probable cause to issue a search warrant, the reviewing court considers the informant's reliability, particularly the informant's credibility and veracity. *State v.*

*Munson*, 594 N.W.2d 128, 136 (Minn. 1999); *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). Several circumstances support an informant's reliability: (1) a first-time informant not involved in criminal activity; (2) an informant who has previously provided correct information; (3) police corroboration of the information; (4) voluntary information unprovoked by motive; (5) references to "controlled purchase[s]"; and (6) statements against penal interest. *Ross*, 676 N.W.2d at 304. The preferred basis for an informant's knowledge has traditionally been recent personal observation, and corroboration of even minor details can lend credence to an informant's tip. *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985).

The district court concluded that no probable cause existed to support the issuance of the warrant to search the Brooklyn Center apartment because the CD's tip was unreliable and because the CRI's controlled buy did not occur in that apartment or its vicinity. The district court weighed the first, third, and fourth factors in *Ross*, and found that, because no information was provided on whether the CD was a first-time informant, the CD could not be presumed reliable; that although police were able to corroborate the information, there was no supporting information as to how the CD acquired it; and that there was no information that the CD came forward voluntarily or made the statements against penal interest. *See Ross*, 676 N.W.2d at 304.

We disagree with the district court's conclusion. "In reviewing the sufficiency of an affidavit under the totality of the circumstances test, courts must be careful not to review each component of the affidavit in isolation." *Wiley*, 366 N.W.2d at 268. "[A] collection of pieces of information that would not be substantial alone can combine to

create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004). Here, the CD provided detailed information to police, including respondent's cellular phone number; the makes, models, and years of the cars he drove; and the addresses of two residences he frequented. Police located respondent through his cell phone and, through observation and earlier police reports, corroborated his driving a 1983 blue Cutlass and a 2006 gray Monte Carlo with specific license plates, which were virtually identical to the CD's descriptions of his vehicles. Likewise, the CRI also described respondent as driving a silver Monte Carlo and a blue Buick, a near match to the earlier-described vehicles. Finally, the CRI conducted a controlled buy of narcotics from respondent at the Aldrich Avenue North apartment, from which respondent was seen driving the previously identified 2006 Monte Carlo. Thus, even though the CD was not presumed reliable, extensive corroboration of details of the CD's information sufficiently establishes its reliability. *See State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998) (stating that an "informant's reliability may be established by sufficient police corroboration of the information supplied, and corroboration of even minor details can 'lend credence' to the informant's information where the police know the identity of the informant"). We conclude that the CD's tip, combined with the independent corroboration obtained by the police, was sufficient to conclude that, under the totality of the circumstances, a "fair probability" existed that "evidence of a crime" would be found in the Brooklyn Center apartment. *See Zanter*, 535 N.W.2d at 633.

The district court also concluded that, because no reasonable suspicion existed to justify the dog sniff at respondent's Brooklyn Center apartment, the information provided

by the dog sniff could not be included in its evaluation of probable cause. Police require reasonable articulable suspicion to walk a narcotics-detection dog down the common hallway of an apartment building. *State v. Davis*, 732 N.W.2d 173, 181 (Minn. 2007). "Reasonable suspicion must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 182 (quotation omitted). But "[t]he requisite showing is not high." *Id.* (quotation omitted). We review the issue of reasonable suspicion de novo, considering the totality of the circumstances. *Id.*

Here, according to the affidavit supporting the warrant application, police had obtained information that respondent was renting the Brooklyn Center apartment, and the CD told police that respondent had been storing narcotics and cash in that apartment. A CRI had also conducted a controlled buy of cocaine from respondent at another location mentioned by the CD. We conclude that, under the totality of the circumstances, police had reasonable articulable suspicion to conduct a dog sniff in the hallway outside respondent's Brooklyn Center apartment.

Respondent cites caselaw indicating that the presence of criminal activity in one location cannot establish probable cause to search a different location. *See, e.g.*, *State v. Souto*, 578 N.W.2d 744, 748 (Minn. 1978) (holding that no probable cause was established to search a defendant's residence when the supporting affidavit did not allege that the defendant ever arranged, sold, or distributed drugs, including from her home); *State v. Kahn*, 555 N.W.2d 15, 18–19 (Minn. App. 1996) (holding that the issuing judge lacked probable cause to issue a warrant to search a defendant's home when he had been

previously arrested for possessing one ounce of cocaine, an amount that an officer knew through training and experience was more than that generally possessed for personal use). But we evaluate the dog sniff under the reasonable-suspicion standard, which is "less demanding than probable cause." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). And once reasonable suspicion for the dog sniff was established, the results of the dog sniff, taken together with additional information in the affidavit, provided probable cause to search the apartment for narcotics. *See State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014) (stating that probable cause to issue a search warrant requires a fair probability that the evidence will be found at the specific site to be searched). Moreover, "[D]irect observation of evidence of a crime at the place to be searched is not required." *Id.* A sufficient nexus between the evidence sought and the place to be searched "may be inferred from the totality of the circumstances." *Id.* Here, we conclude that the information contained in the affidavit established a sufficient nexus between the Brooklyn Center apartment and the illegal narcotics. Therefore, the district court erred by suppressing the evidence resulting from the search.

**Reversed and remanded.**