*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1603**

State of Minnesota,
Appellant,

vs.

Amanda Nicole Williams,
Respondent.

**Filed March 30, 2015
Affirmed
Schellhas, Judge**

Pennington County District Court
File No. 57-CR-14-87

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Alan G. Rogalla, Pennington County Attorney, Stephen R. Moeller, Assistant County Attorney, Thief River Falls, Minnesota (for appellant)

Mark D. Nyvold, Fridley, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

In this pretrial appeal, the state asserts that the district court erred by suppressing evidence and dismissing the complaint. We affirm.

## FACTS

On July 21, 2013, Special Agent Ronald Woolever of the Bureau of Criminal Apprehension (BCA) met with a confidential informant (CI), who reported having observed respondent Amanda Nicole Williams in possession of a quantity of methamphetamine. That same day, based on the CI's information, SA Woolever began drafting an affidavit to support a search warrant. At SA Woolever's request, Officer Scott Mekash and Investigator Marissa Adam of the Thief River Falls Police Department began to conduct surveillance on Williams's vehicle, which was located in a park area. After 10 to 15 minutes of surveillance, Williams and three young children left the park area in Williams's vehicle. Officer Mekash contacted SA Woolever, who instructed Officer Mekash to stop Williams's vehicle and detain Williams. Officer Mekash and Investigator Adam stopped Williams's vehicle, and Investigator Adam drove the vehicle to the law-enforcement center with Williams and the children in the vehicle. At the law-enforcement center, officers placed Williams in an interview room and the children in a different room. SA Woolever then interviewed Williams and asked whether she would consent to a search of her home. Williams said yes and signed a consent-to-search form. In the subsequent search, officers discovered approximately 31.2 grams of methamphetamine.

More than six months later, appellant State of Minnesota charged Williams with first-degree controlled-substance crime (possession of 25 or more grams of methamphetamine) under Minn. Stat. § 152.021, subd. 2(a)(1) (2012). Williams moved to suppress any and all evidence obtained as a result of the traffic stop and her arrest,

arguing that her consent to search her home was not voluntary. The district court granted Williams's motion to suppress and dismissed the complaint.

This appeal follows.[1]

**D E C I S I O N**

"When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations, such as whether there was a seizure and, if so, whether that seizure was unreasonable, are reviewed de novo." *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted). Thus, "determinations of reasonable suspicion and probable cause as they relate to searches and seizures should be reviewed de novo on appeal." *State v. Lemieux*, 726 N.W.2d 783, 787 (Minn. 2007) (quotation omitted).

Both the U.S. Constitution and the Minnesota Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "A warrantless arrest is reasonable if supported by probable cause." *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011).[2] "Probable cause to arrest exists when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would

---

[1] "In order for an appellate court to review a pretrial order, the State must show that the district court's ruling will have a critical impact on its case." *State v. Obeta*, 796 N.W.2d 282, 286 (Minn. 2011). Here, the state asserted in its statement of the case, and Williams concedes in her brief, that the district court's order had a critical impact on the state's case against Williams.

[2] No apparent relationship exists between appellant Amanda Williams in this case and appellant Quenton Williams in the cited case.

entertain an honest and strong suspicion that a specific individual has committed a crime." *Id.* (emphasis omitted) (quotation omitted). "The 'honest and strong suspicion' standard requires more than mere suspicion, but less than the evidence required for a conviction." *State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2011). "The inquiry is objective, and the existence of probable cause depends on all of the facts of each individual case." *Williams*, 794 N.W.2d at 871.

Whether information from an informant is sufficient to establish probable cause "depends on the totality of the circumstances of the particular case, including the credibility and veracity of the informant." *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999); *see also U.S. v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) ("Although 'an informant's veracity, reliability and basis of knowledge are all highly relevant' in determining whether probable cause exists when an affidavit is based on hearsay information, they are not 'entirely separate and independent requirements to be rigidly exacted in every case.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983)) (internal quotations omitted in original)). We consider six factors to determine the reliability of an informant who is confidential but not anonymous:

> (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

4

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). "If a case is close, the lack of a warrant may weigh against finding probable cause." *Id.*

*Arrest*

"The ultimate test to be used in determining whether a suspect was under arrest is whether a reasonable person would have concluded, under the circumstances, that he was under arrest and not free to go." *State v. Beckman*, 354 N.W.2d 432, 436 (Minn. 1984) (citing *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319 (1983)). Here, the district court determined, and the state apparently concedes, that Williams's arrest occurred at the time that officers stopped her vehicle. The evidence shows that after the officers stopped Williams's vehicle, Investigator Adam identified herself as a police officer, said, "I need you to come to the Law Enforcement Center," and drove Williams and the three children to the law-enforcement center in Williams's vehicle. Because a reasonable person under such circumstances would have concluded that she was under arrest and not free to go, we agree that Williams's arrest occurred when officers stopped her vehicle. *Cf. Wahl v. Comm'r of Pub. Safety*, 354 N.W.2d 561, 562 (Minn. App. 1984) (stating that "[w]hen the officer requested [driver] accompany him to the police station after he failed the field sobriety tests, [driver] could not reasonably have believed he had a choice whether to accompany the police officer").

Both Officer Mekash and Investigator Adam testified that they stopped Williams's vehicle at the request of SA Woolever and that they had no independent basis for the stop, such as a traffic or equipment violation. Williams's arrest therefore was supported by probable cause only if SA Woolever's knowledge provided probable cause to arrest

Williams. *See State v. Conaway*, 319 N.W.2d 35, 40 (Minn. 1982) (stating that "the entire knowledge of the police force is pooled and imputed to the arresting officer for the purpose of determining if sufficient probable cause exists for an arrest" (emphasis omitted)). In addition to SA Woolever's testimony about the information that he received from the CI about Williams's possession of methamphetamine, Woolever's BCA report, which was submitted to the district court, states in relevant part:

> On July 21, 2013 SA Woolever met with BCA CI X-2008 (hereinafter X-2008) and learned that X-2008 observed Amanda WILLIAMS to be in possession of a quantity of methamphetamine while driving a [vehicle identified by color, year, make, model, and license plate number].
>
> . . . .
>
> SA Woolever while searching WILLIAMS's purse [during the search of her home] found $700.00 in US Currency. (This money matched photocopied money used previously by a CRI while working under the direction of SA Woolever to purchase 2 8balls of methamphetamine from WILLIAMS earlier on the day of 07-21-13[.])

Because the state presented no evidence to show that the CI was a first-time citizen informant, came forward voluntarily, or made a statement against the CI's interests, the first, fourth, and sixth reliability factors under *Ross* plainly are not applicable. Nor does SA Woolever's report state whether "a CRI" is the same CI who is named elsewhere in the report as "BCA CI X-2008" or "X-2008." Moreover, regardless of who made the purchase mentioned in the report, the report does not refer to the purchase as a "controlled purchase," which "is a term of art that indicates reliability" in

6

narcotics cases. *See Ross*, 676 N.W.2d at 304 (quotation omitted). The fifth reliability factor under *Ross* is not applicable.

The applicability of the only two remaining reliability factors hinges on whether the CI gave reliable information to police in the past (second factor) and whether police corroborated the information that the CI provided on July 21, 2013 (third factor). *See id.* As to the second factor, the only indication that the CI gave past reliable information to police is SA Woolever's single testimonial reference to "a confidential reliable informant."[3] The state argues that this reference is sufficient to satisfy the second factor and cites, inter alia, *Ross*, 676 N.W.2d at 304, and *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). *Ross* provides that "[t]he second factor is fulfilled by a simple statement that the informant has been reliable in the past because 'this language indicates that the informant had provided accurate information to the police in the past' and thus gives '. . . reason to credit the informant's story.'" 676 N.W.2d at 304 (quoting *Wiley*, 366 N.W.2d at 269). *Ross* also provides that "[t]here is no need for law-enforcement officers to provide specifics of the informant's past veracity." *Id.* But in *Ross*, "[t]he CRI had previously provided accurate information resulting in successful arrests." *Id.* at 303. Likewise, in *Wiley*, the affidavit in support of a search warrant "stated that the informant 'has been used over several years successfully.'" 366 N.W.2d at 269; *see also Munson*, 594 N.W.2d at 136 (stating that "further elaboration concerning the specifics of the CRI's veracity is not typically required," where officer "testified that, by definition, a CRI was

---

[3] SA Woolever's report also makes a single reference to "a CRI," but the report does not indicate whether "a CRI" is the same CI who is named elsewhere in the report as "BCA CI X-2008" or "X-2008."

7

someone who had previously provided the police with information that led to an arrest and that the particular CRI who provided the information about [defendant] had given the police reliable information in the past").

In contrast, this case involves a one-word label—"reliable"—applied to the CI, without any accompanying statement that the CI "has been reliable in the past." *See Ross*, 676 N.W.2d at 304; *see also State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978) (stating that "it is not enough . . . [to] state[] in a conclusory fashion that [an informant] is credible or reliable"). The second reliability factor under *Ross* is not applicable on these facts.

As to the third reliability factor, the state asserts that the CI's information was corroborated when Officer Mekash and Investigator Adam "personally identif[ied Williams] driving the vehicle described by" the CI.[4] "Even corroboration of minor details lends credence to an informant's tip and is relevant to the probable-cause determination." *State v. Holiday*, 749 N.W.2d 833, 841 (Minn. App. 2008); *see also Munson*, 594 N.W.2d at 136 (stating that "independent corroboration of even innocent details of an informant's tip may support a finding of probable cause"). But in light of the inapplicability of every other informant-reliability factor, police corroboration of public, easily obtained information about Williams's vehicle was insufficient to establish probable cause in this case. *Cf. State v. Walker*, 584 N.W.2d 763, 764, 768 (Minn. 1998) (disapproving this

---

[4] The state also asserts that police corroborated information regarding the location of Williams's home. We summarily reject this assertion, as the record is devoid of any indication that the CI ever mentioned Williams's home to SA Woolever.

court's "presuppos[ition]" of reliability of anonymous letter implicating defendant and accomplice in murder and stating that "[e]vidence of the letter's reliability is lacking because the police did not corroborate any information in the letter beyond [defendant]'s and [accomplice]'s identity and [defendant]'s address"); *State v. Cook*, 610 N.W.2d 664, 668 (Minn. App. 2000) (concluding that corroboration of confidential informant's "description of [defendant]'s clothing, physical appearance, vehicle, and present location" did not establish "any link between [defendant] and illegal activity" reported by informant), *review denied* (Minn. July 25, 2000); *State v. Albrecht*, 465 N.W.2d 107, 109 (Minn. App. 1991) (concluding that "corroboration of [anonymous informant's information regarding defendant's] address and car ownership, without more, is not sufficient to support a finding of probable cause").

The state did not demonstrate adequately the CI's reliability and presented no other evidence to support an honest and strong suspicion that Williams had committed a crime. Under the totality of the circumstances, we conclude that SA Woolever did not have probable cause to arrest Williams. Williams's arrest therefore was unlawful.

*Consent*

Although Williams's consent to a search of her home followed her unlawful arrest, we address the consent issue because the state argues in the alternative that the taint of the unlawful arrest was purged by Williams's voluntary consent to search. "Established exceptions to the warrant requirement include . . . searches conducted after obtaining voluntary consent . . . ." *State v. Johnson*, 813 N.W.2d 1, 14 (Minn. 2012). "For a search to fall under the consent exception, the State must show by a preponderance of the

9

evidence that the defendant freely and voluntarily consented." *State v. Brooks*, 838

N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

> The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact. Therefore, the clearly erroneous standard controls [appellate] review of a district court's finding of voluntary consent. Findings of fact are clearly erroneous if, on the entire evidence, [the appellate court is] left with the definite and firm conviction that a mistake occurred.

*State v. Diede*, 795 N.W.2d 836, 846–47 (Minn. 2011) (quotations and citations omitted).

"Whether consent is voluntary is determined by examining the totality of the circumstances." *Brooks*, 838 N.W.2d at 568 (quotation omitted). The totality of the circumstances "includ[es] the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted).

In this case, police stopped Williams's vehicle, drove her and the three children who were with her to the law-enforcement center, and told her, "when you get to the Law Enforcement Center, I'll explain to you what's going on." Although officers allowed Williams a brief visit with the children at the law-enforcement center, the children otherwise were kept apart from Williams. The state asserts that SA Woolever recorded his conversation with Williams and that it presented the district court with a recording of that conversation. The state also asserts that "the record shows [Williams] wasn't asked one question about the possible presence of drugs in her residence." In actuality, the record shows no such thing because SA Woolever failed to record his interview of Williams, except for the reading and signing of the consent-to-search form. Moreover,

the narrative portion of SA Woolever's report states that Williams "advised" SA Woolever that she "had a large quantity of methamphetamine in a shoe box in the master bedroom area" of her home, suggesting that SA Woolever did ask Williams questions about the presence of drugs in her home.

Due to SA Woolever's failure to record his interview of Williams, the record is essentially devoid of what was said and how it was said during the interview, leaving the district court with no way to determine whether Williams's consent was voluntary. We conclude that the district court did not err in finding that the state failed to prove, by a preponderance of the evidence, that Williams gave her consent voluntarily and without coercion. Accordingly, we decline to address the state's alternative argument that, even if Williams's arrest was unlawful, the taint of her unlawful arrest was purged by her voluntary consent.

**Affirmed.**