*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1428**

State of Minnesota,
Appellant,

vs.

David Wokeph Natee,
Respondent.

**Filed March 11, 2024
Reversed
Reilly, Judge**[*]

Hennepin County District Court
File No. 27-CR-21-17142

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam Petras, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Michael P. Berger, Chief Hennepin County Public Defender, Paul J. Maravigli, Assistant Hennepin County Public Defender, Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Cochran, Judge; and Reilly, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REILLY**, Judge

In this pretrial appeal by the state from the district court's order suppressing evidence against respondent, appellant argues that (1) the district court's pretrial suppression order had a critical impact on its ability to prosecute the case, and (2) the district court erred by suppressing evidence because the district court did not properly credit the veracity and basis of knowledge of the confidential reliable informant. We reverse.

## FACTS

In September 2021, officers with the Minneapolis Police Department Gun Investigation Unit received a tip from an identified confidential reliable informant (CRI) that respondent David Wokeph Natee was near Lake Street and 12th Avenue South in a blue BMW SUV. The CRI reported that Natee was in possession of drugs and that they had personally observed Natee possessing a firearm in the waistband of his pants. Officers investigated Natee's criminal history and learned that he was prohibited from possessing a firearm because of a prior felony conviction.

Officers responded to the area about 30 minutes after receiving the tip and found a blue BMW SUV parked one block away from the Lake Street and 12th Avenue intersection. Police identified Natee as the sole occupant of the vehicle. Officers approached Natee and arrested him. In searches incident to that arrest, officers found a firearm in the waistband of Natee's pants and discovered a bag containing drugs in the back

seat of the vehicle. Natee acknowledged that the drugs belonged to him, but claimed the firearm belonged to his wife and he was only carrying it for protection.

Appellant State of Minnesota charged Natee with one count of unlawful possession of a firearm and one count of first-degree possession of a controlled substance. Natee filed a pretrial motion to suppress evidence of the firearm and the drugs. At a hearing on Natee's suppression motion, the investigator who received the CRI's tip testified to its contents and to the CRI having provided accurate information to law enforcement in the past. Following the hearing, the district court granted Natee's motion. The district court determined that the state had not adequately established the basis for the CRI's knowledge of a crime and that the information provided by the CRI was not sufficiently corroborated by police. The district court concluded that the information received from the CRI "was insufficient to establish probable cause to arrest and search the car and therefore evidence obtained from that arrest and search is suppressed."

The state appealed. This court issued a nonprecedential opinion on March 20, 2023, affirming the district court. *State v. Natee*, No. A22-1428, (Minn. App. Mar. 20, 2023), *vacated mem.* (Minn. Oct. 25, 2023). The Minnesota Supreme Court granted the state's petition for further review and stayed the appeal pending its decision in *State v. Mosley*, which similarly addressed whether information provided by a CRI was sufficient to establish probable cause for a warrantless arrest and search of a vehicle.

The supreme court decided *Mosley* on September 6, 2023. *State v. Mosley*, 994 N.W.2d 883 (Minn. 2023). It issued an order dissolving the stay of this appeal, vacating

this court's prior opinion, and remanding the matter to this court for reconsideration of the case in light of *Mosley*.

## DECISION

### I. Critical Impact

The state's ability to appeal in a criminal case is limited. *State v. Lugo*, 887 N.W.2d 476, 481 (Minn. 2016). In the case of a pretrial order, the state must establish that unless the district court's ruling is reversed the alleged error will have a "critical impact" on the outcome of the trial. *State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001), *rev. dismissed* (Minn. June 22, 2001). Critical impact exists "where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Ault*, 478 N.W.2d 797, 799 (Minn. App. 1991) (quotation omitted). Here, the suppression of the state's evidence related to the firearm and the controlled substances meets this requirement, and so the critical-impact requirement for this appeal is satisfied.

### II. Suppression of Evidence

The state argues that the district court erred in suppressing the evidence against Natee because the court improperly evaluated the CRI's veracity and basis of knowledge in determining that the provided tip did not establish probable cause for Natee's arrest.

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999) (citing *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992)). We review

4

de novo the legal issue of whether a search was justified, and we review findings of fact for clear error. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The United States and Minnesota Constitutions guarantee the right of the people to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are unreasonable unless a recognized exception to the warrant requirement applies. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). And the state bears the burden of proving that a warrantless search or seizure was constitutionally permissible. *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003).

"Police may arrest a felony suspect without a warrant in any public place provided they have probable cause." *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000) (footnote omitted), *rev. denied* (Minn. July 25, 2000). "The test of probable cause to arrest is whether the objective facts are such that under the circumstances 'a person of ordinary care and prudence [would] entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982) (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978)). In determining whether there was probable cause to arrest a suspect, "we must independently review the facts to determine the reasonableness of the actions of the police," and we will not set aside a district court's finding of probable cause unless it is clearly erroneous. *State v. Loving*, 775 N.W.2d 872, 880-81 (Minn. 2009).

When probable cause to arrest is based upon information provided to police by an identified informant, the relevant inquiry is whether the tip has "sufficient indicia of reliability." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). In determining a

5

tip's reliability, courts are to evaluate "the credibility of the informant and the basis of the informant's knowledge in light of all the circumstances." *Cook*, 610 N.W.2d at 667. Among the circumstances relevant to this analysis are whether the informant had provided reliable information to police in the past, the extent to which police could corroborate information in the tip to ensure the informant's current reliability, and whether the tip was based on the informant's personal knowledge. *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004); *see also State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985) ("Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge.").

Here, the state does not dispute that the police arrested Natee without a warrant upon encountering him. And Natee does not dispute that the contents of the informant's tip, if sufficiently reliable, established probable cause that Natee was unlawfully possessing a firearm. Thus, the dispositive question before this court is whether the state adequately established the CRI's reliability so as to have permitted police to rely on their tip as a basis for arresting Natee.

In *Mosley*, police received a tip from a CRI who personally observed a man selling marijuana from a vehicle while in possession of a firearm. 994 N.W.2d at 885. The informant, who had previously provided police with reliable information in unrelated matters, gave a general description of the suspect—a "black male in their mid-20s"—and a description of the vehicle, its license plate number, and its location at a specific gas station. *Id.* at 885-86. Police arrived at the gas station about 30 minutes after receiving the informant's tip and observed a vehicle matching the provided description. *Id.* at 887.

6

Officers stopped the vehicle shortly after it left the gas station, detained the sole occupant—Mosley—and searched the vehicle, finding marijuana, a digital scale, and a pistol. *Id*. at 886-87.

The state charged Mosley with unlawful possession of a firearm. *Id*. at 885. Mosley moved to suppress the evidence against him as having been obtained pursuant to an unlawful warrantless search of his vehicle. *Id*. Relevant here, Mosley argued that the informant was of "doubtful reliability," and so greater corroboration of the tip was required before the informant's personal observations alone could support probable cause for a vehicle search. *Id*. at 890. The district court granted Mosley's motion and suppressed the evidence; this court affirmed. *State v. Mosley*, No. A22-1073, (Minn. App. Jan. 17, 2023), *rev'd*, 994 N.W.2d 883 (Minn. 2023).

On the state's petition for further review, the Minnesota Supreme Court reversed. In doing so, and with regard to the reliability of the informant's tip, the court stated:

> In determining whether an informant's tip has sufficient indicia of reliability, the [United States] Supreme Court has made clear that reliability and basis of knowledge are not a rigid two-pronged test but are relevant considerations. And importantly, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Mosley*, 994 N.W.2d at 890 (quotations and citations omitted). In analyzing these two facets of a tip's reliability, the court reached two conclusions relevant here.

First, the court determined that the CRI was sufficiently reliable based solely on their track record with police. *Id*. at 890. Relying on its prior opinion in *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999), the court noted that officer testimony that a CRI has

7

given reliable information in the past is sufficient to establish the informant's reliability without the need for specific details about that prior cooperation. *Id.* at 890-91. And because law enforcement testified that the CRI who provided the tip had supplied accurate information on multiple occasions in the past, the court determined that the CRI was "reliable" for purposes of its probable-cause analysis. *Id.* at 891.

Second, the court noted that when an informant's "basis of knowledge" for the tip is their personal observation of incriminating conduct, "police do not need to corroborate significant details in the tip for the tip to be sufficient to support probable cause." *Id.* at 892. Rather, "corroboration of minor details is enough to 'lend credence' to an informant's tip based on personal knowledge." *Id.* (quoting *Wiley*, 366 N.W.2d at 269). In *Mosley*, although police only corroborated "easily obtained" details of the informant's tip—"the vehicle, its location, and its license plate number"—the court concluded that "the Informant's personal observations, along with police corroboration of some details in the tip, support the conclusion that both the Informant and the source of the Informant's knowledge were reliable." *Id.*

Natee's case presents a similar constellation of circumstances. The CRI's identity was known to police at the time of the tip, police testified that the CRI had previously provided reliable information to law enforcement, and the tip was based on the CRI's personal observation of Natee in possession of a firearm. For these reasons, and as explained in *Mosley*, police were therefore not required to have corroborated significant details of the tip for it to establish probable cause for Natee's arrest. *See id*. And upon

8

comparing the corroboration by police in Natee's case with that in *Mosley*, we are satisfied that it was sufficient here to establish the tip's reliability.

In *Mosley*, the corroborated details of the informant's tip were the description of the vehicle, its location at a specific gas station, and its license plate number. *Id.* Here, by contrast, the CRI provided police with not only a description of the vehicle and its location but with the specific identity of the driver as well. Rather than a general description of the driver or the vehicle's license plate number—which could be easily discerned by any random passerby—the informant told police precisely who would be driving a blue BMW SUV. And when police located a blue BMW SUV parked near the identified intersection and confirmed the driver to be the exact person identified by the informant, officers had corroborated more than just the "easily obtained" details considered sufficient in *Mosley*.

In its order suppressing the evidence against Natee, the district court concluded that the CRI's "averment of personal knowledge" was insufficient to show a basis of knowledge for the tip, and that police had failed to corroborate sufficiently "important details" of the tip before arresting Natee. The supreme court's opinion in *Mosley*, however, refutes similar conclusions. Rather, because the CRI here had previously provided reliable information to law enforcement, and because the current tip was based on their personal observation of criminal conduct, police corroboration of the vehicle type, its location, and the identity of its driver was sufficient to deem the tip "reliable" and thus provide probable cause for Natee's arrest.

Because the state presented sufficient evidence to establish that police had probable cause to arrest Natee based on the CRI's tip, the district court erred as a matter of law in granting Natee's motion to suppress evidence.

**Reversed.**