**STATE of Minnesota, Respondent,**

**v.**

**Allen Clarence HOCHSTEIN,
Appellant.**

**No. C4–00–992.**

Court of Appeals of Minnesota.

Feb. 27, 2001.

Mike Hatch, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Thomas Kelly, Wright County Attorney, Buffalo, MN, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HARTEN, Presiding Judge, HANSON, Judge, and PORITSKY, Judge.

## OPINION

BERTRAND PORITSKY, Judge *

Appellant, convicted of drug-related offenses and the offense of being a felon in possession of a firearm, raises several issues on appeal. Appellant contends that (1) the state's failure to follow proper discovery rules prejudiced his defense; (2) the search warrant was not supported by probable cause; (3) the trial court erred in determining he could be impeached with a prior conviction if he chose to testify; (4) the trial court erred in adjudicating him guilty of a lesser-included offense; and (5) the trial court erred in sentencing him for two crimes that arose out of the same behavioral incident. We vacate appellant's conviction for the first-degree controlled-substance crime and remand for sentencing on the second-degree controlled-substance crime; vacate his sentence for the fifth-degree controlled-substance crime; and affirm the trial court's rulings that the search warrant was supported by probable cause and that the prior conviction would be admissible to impeach him if he chose to testify.

## FACTS

On February 10, 2000, a jury found appellant Allen Clarence Hochstein guilty of the following controlled-substance crimes: first degree, in violation of Minn.Stat. § 152.021, subd. 2(1) (1998) (possession of a mixture weighing 25 or more grams containing methamphetamine); second degree, in violation of Minn.Stat. § 152.022, subd. 2(1) (1998) (possession of a mixture weighing six or more grams containing methamphetamine); and fifth degree, in violation of Minn.Stat. § 152.025, subd. 2(1) (1998) (possession of more than a small amount of marijuana). The jury also found Hochstein guilty of being a felon in possession of a firearm, in violation of Minn.Stat. § 624.713, subd. 1(b) (1998). The charges arose out of evidence seized

from. appellant's residence, including marijuana, firearms, substances containing methamphetamine, and drug paraphernalia.

On March 17, 2000, the trial court sentenced appellant. On the first-degree controlled-substance crime, the court ordered appellant committed to the custody of the Commissioner of Corrections for 98 months. The court imposed no sentence on the second-degree controlled-substance charge. On the fifth-degree controlled-substance crime, the court adjudicated appellant guilty and committed him to the custody of the Commissioner of Corrections for 15 months, to be served concurrently with the first-degree crime. On the felon-in-possession-of-a-firearm charge, the court adjudicated appellant guilty and committed him to the custody of the Commissioner of Corrections for 60 months, to be served concurrently with the other two sentences.

## ISSUES

I. Was it error to admit evidence of the weight of the methamphetamine when the state failed to give appellant notice that the drug would be analyzed?

II. Was the search warrant supported by probable cause?

III. Was it error to rule that appellant's 1991 conviction could be used to impeach him if he chose to testify?

IV. Was it error to sentence appellant for both controlled substance crimes, in the first and fifth degree?

## ANALYSIS

### I. Discovery Violation

■ Appellant contends that the trial court erred by admitting evidence of the weight of the methamphetamine when the state failed to notify him that the drug would be analyzed. The police searched appellant's residence and seized the evi-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

dence on February 13, 1999. On February 15, 1999, the police conducted field tests of the substances seized. The substances field-tested positive for marijuana and methamphetamine. The tests also determined that the weight of methamphetamine was 25.4 grams. The state filed a complaint on February 16, 1999. Appellant first appeared in court with an attorney on February 19, 1999. The Bureau of Criminal Apprehension (BCA) weighed the substance in question on February 23 and completed the analysis on March 18, 1999. According to the BCA analysis, the total weight of the substance was 25.7 grams.

On December 2, 1999, appellant made a motion for an order allowing him to conduct his own analysis to determine the weight of the substance. At the hearing on the motion, the state explained that the weight would not match the BCA's result because the BCA first weighs the substance and then removes a sample for testing. The state also explained that the BCA does not weigh the substance again after testing and that BCA analysts would not be able to determine how much of the sample was used in the analysis. Given the narrow margin between the amount seized, 25.7 grams, and the 25 gram cut-off needed to establish the first-degree offense, it appears the parties agreed that any further analysis of the remaining substance would not yield a valid result on the relevant issue of whether the amount seized was sufficient to establish the first-degree offense. Appellant did not pursue any further analysis.

Minn. R.Crim. P. 9.01, subd. 1(4), requires the state to give the defendant notice before conducting any scientific test or experiment that may preclude any further tests or experiments:

The prosecuting attorney shall disclose and permit defense counsel to inspect and reproduce any results or reports of physical or mental examinations, scientific tests, experiments or comparisons made in connection with the particular case. * * * If a scientific test or experi-

ment of any matter * * * may preclude any further tests or experiments, the prosecuting attorney shall give the defendant reasonable notice and an opportunity to have a qualified expert observe the test or experiment.

*See also State v. Freeman,* 531 N.W.2d 190, 197 (Minn.1995). The construction of a procedural rule is reviewed de novo. *State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn. 1998).

Although the state's testing did not destroy appellant's ability to retest the substances for their content, it did eliminate appellant's ability to weigh the substances accurately. We note that the police conducted a field test and weighed the substance prior to charging appellant. At this point it well might have been reasonable for the state not to give notice because the state is under a time constraint to charge the defendant. Here, however, the BCA analysis was not done during the charging phase; it was done after appellant made an appearance with his attorney. We conclude that the failure to give notice was a violation of rule 9.01.

In determining whether to impose sanctions for failure to notify,

the court should consider all relevant factors, including the reason why notice was not given and the extent to which the violation prejudiced the opposing party.

*Freeman,* 531 N.W.2d at 198 (citation omitted). In this case, the state offers no reason why the notice was not given. The field test result—25.4 grams—put the prosecutor's office and the BCA on notice that the BCA's analysis might reduce the amount of the substance to a level where a further test to determine its weight would not yield a valid result on a critical issue— whether the state had evidence to convict appellant of a first-degree offense or whether the evidence was sufficient only for a second-degree offense. The failure to give notice prevented appellant from having his own expert observe the test, in

violation of the rule. The state's argument that after the test appellant could still analyze the substance to determine whether it was methamphetamine misses the point. What is critical is the amount of the substance, not its composition.

In *Freeman,* the court upheld the admission of the state's evidence notwithstanding the failure to give notice and the fact that the state's test precluded further testing, because it appeared the state did not act in bad faith and because the state provided defendant with a narrated videotape of the inspection. *Id.* By contrast, in the present case, the state did not provide appellant with a videotape or any other procedure by which appellant could have his own expert cross-check the weight of the methamphetamine. Nor did the state provide an explanation for its failure to notify appellant.

■ In general, the trial court is particularly situated to determine the sanction for a discovery abuse, and preclusion is a severe sanction which is not to be lightly invoked. *Id.* at 197–98. But given the prejudice to appellant, it is our conclusion that it was an abuse of discretion to admit evidence of the weight of the substance. *See State v. Schwantes,* 314 N.W.2d 243, 245 (Minn.1982) (ordering a new trial for an inadvertent failure to comply with discovery rules). Sending the matter back for a new trial on the first-degree controlled-substance crime will not be an adequate remedy. The only appropriate remedy is to vacate the conviction and remand the matter for resentencing on the second-degree controlled-substance crime. *See State v. Pflepsen,* 590 N.W.2d 759, 766 (Minn.1999) (noting authority to impose a sentence or stay of sentence on a lesser-included offense after the primary offense has been vacated).

Our decision to vacate appellant's conviction for the first-degree controlled-substance crime disposes of appellant's contention that the trial court erred when it adjudicated him guilty of both first-degree possession and the lesser-included offense of second-degree possession.

## II. Search Warrant

■ Appellant contends that evidence seized from his residence should have been suppressed because the search warrant was not supported by probable cause, specifically alleging that the informants were not reliable and the information was stale.

■ In determining whether a warrant is supported by probable cause, this court does not review the magistrate's decision de novo but accords great deference to the probable-cause finding. *State v. Harris,* 589 N.W.2d 782, 787 (Minn.1999). Review is limited to ensuring that "the issuing judge had a 'substantial basis' for concluding that probable cause existed." *State v. Zanter,* 535 N.W.2d 624, 633 (Minn.1995) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). "[T]he resolution of doubtful or marginal cases should be 'largely determined by the preference to be accorded to warrants.'" *State v. McCloskey,* 453 N.W.2d 700, 704 (Minn. 1990) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

■ In determining whether probable cause existed, the issuing judge and the reviewing court may consider only the information presented in the affidavit offered in support of the search-warrant application. *State v. Kahn,* 555 N.W.2d 15, 18 (Minn.App.1996). Elements indicating probable cause include information linking the crime to the place to be searched, the freshness of the information, and the reliability of the sources of information. *State v. Souto,* 578 N.W.2d 744, 747 (Minn.1998). The existence of probable cause based on an informant's tip is determined by a "totality of the circumstances" test:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit

before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). We find probable cause existed based on (a) appellant's prior criminal record; (b) the reliability of the informants' statements, which were corroborated by statements of other informants and by the officer's independent investigation; and (c) a showing that appellant's activities constitute an ongoing criminal activity.

First, the affidavit supporting the search warrant application noted that appellant has been arrested three times for drug-related offenses and convicted of a fourth-degree controlled-substance crime. *See State v. Lieberg,* 553 N.W.2d 51, 56–57 (Minn.App.1996) (finding defendant's entire history of criminal behavior—not only convictions—helpful and properly considered as one factor in the totality of relevant circumstances for finding probable cause).

 Second, the affidavit establishes that the informants' statements, taken as a whole, show sufficient reliability and basis of knowledge. Although there is no showing of how the first of the three informants learned that appellant was selling methamphetamine, this informant's statement corroborates, and is corroborated by, the statements of the other two informants. As to the second informant, the affiant police officer verified his/her identity by using the informant's driver's license. *See State v. Lindquist,* 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973) ("One who voluntarily comes forward and identifies herself is more likely to be telling the truth because she presumably knows that the police could arrest her for making a false report." (citations omitted)). Also, the police confirmed the second informant's statement that appellant

has a motor home. *See State v. Ward,* 580 N.W.2d 67, 71 (Minn.App.1998) (finding that reliability may be established by corroboration of "even minor details" that lend credence to the supplied information) (citation omitted). The affidavit established the personal-knowledge basis of the second informant's statement: he/she had been to appellant's home, saw guns there—including an AK 47—and observed methamphetamine in the home.

The police identified the third informant with a driver's license, and the third informant also referred to the later-corroborated fact that appellant has a motor home. This informant's information was based on personal knowledge after visiting appellant's home and seeing guns near the door. He/she also had a conversation with appellant within 72 hours before execution of the affidavit. In this conversation, the informant talked to appellant about "the drugs," which, given the context, refers to the drugs appellant brought back from Mexico. Furthermore, the affiant police officer states that, based on his own investigation, he discovered that appellant has no legal source of income.

 Finally, appellant's argument that the information in the warrant was stale is rebutted by the following: first, certain information provided by the third informant was only three days old when the court signed the warrant; and second, information supplied by the affiant and the informants shows that appellant was engaged in ongoing criminal activities. "When an activity is of an ongoing, protracted nature, the passage of time is less significant." *Souto,* 578 N.W.2d at 750 (citation omitted). Thus, we conclude that the information is sufficiently current.

## III. Impeachment by Use of Prior Conviction

 Appellant contends the trial court erred in ruling that his 1991 conviction for possession of methamphetamine could be used to impeach him if he chose

to testify. "Whether the probative value of the convictions outweighs their prejudicial effect is a matter left to the discretion of the trial court." *State v. Graham*, 371 N.W.2d 204, 208 (Minn.1985) (citations omitted). The trial court's ruling on the impeachment of a witness by prior conviction will not be reversed absent a clear abuse of that discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn.1998). Appellant argues that the prejudicial effect outweighed the probative value because the prior conviction had little impeachment value, the admission deterred his testimony, and his testimony was crucial to the case.

Evidence of prior convictions may be admissible to impeach a defendant's testimony if the underlying offenses are less than ten years old, punishable by imprisonment in excess of one year, and "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)-(b). To determine whether the probative value outweighs the prejudicial effect, the court should consider the factors enumerated in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978):

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Ihnot*, 575 N.W.2d at 586 (quoting *State v. Jones*, 271 N.W.2d at 538).

### A. Impeachment Value

Appellant argues that his prior conviction had little impeachment value because it does not relate to his truthfulness and honesty. While drug convictions are not the type of crime that directly relates to truth or falsity, a crime need not relate directly to truth or falsity to be admissible.

*State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993) ("[I]mpeachment by prior crime aids the jury by allowing it to see the whole person and thus to judge better the truth of his testimony." (quotations omitted)). Also, any prejudice appellant might have suffered is mitigated by his impeachment of Heidi Nelson, using her past drug convictions. *See State v. Owens*, 373 N.W.2d 313, 316–17 (Minn.1985) (holding impeachment of defendant by prior conviction fair because defendant impeached state's witness by prior conviction). Thus, this factor, which might have weighed in favor of exclusion, loses that weight.

### B. Age of the Offense

This factor weighs in favor of exclusion because appellant's 1991 conviction was approximately nine years old at the time of trial.

### C. Similarity of the Impeaching Offense

This factor also weighs in favor of exclusion because the fourth-degree conviction for possession of methamphetamine is nearly identical to the charged offenses of possession of methamphetamine.

### D. Importance of Appellant's Testimony

To analyze this factor, it is necessary to ascertain what appellant's testimony would have been had he testified. In his brief to this court, he makes the vague statement that he would have "explain[ed] to the jury what actually happened." He then refers to his memorandum to the trial court, in which he stated:

> In this case, the prosecution has listed several witnesses who will claim that Mr. Hochstein was in possession of methamphetamine. It is essential that Mr. Hochstein be allowed to explain the relationship between he [sic] and those individuals and whether or not they may have reason to fabricate the truth.

Thus, appellant's testimony would have been an attempt to impeach the state's witnesses. All those witnesses were subject to cross-examination at trial, where appellant had available all tools of impeachment. While appellant's testimony might have helped his case, those matters to which he would have testified were subject to alternate proof, and thus this factor does not weigh in favor of exclusion.

### E. Centrality of Appellant's Credibility

Had appellant testified, the trial may well have come down to an issue of who was lying, and thus appellant's credibility would have been a central issue, as was the credibility of the state's witnesses, including Heidi Nelson, who was impeached with her past drug convictions. Appellant concedes that his credibility would have been an issue had he testified. This factor weighs heavily in favor of admitting the prior conviction.

 In making the analysis required by *Ihnot* and *Jones*, the trial court is not simply to add up the factors and arrive at a mathematical result. Depending on the particular facts of the case, the trial court may assign different weights to different factors. Because the trial court is in a unique position to make this determination, it must be accorded broad discretion. Given our analysis and the broad discretion vested in the trial court on this issue, we cannot say the court abused its discretion in ruling to admit the prior offense to impeach appellant had he chosen to testify.

### IV. Sentencing on Both First–Degree and Fifth–Degree Controlled Substance Crimes

Appellant argues that the trial court erred in sentencing him for both possession of methamphetamine and possession of marijuana. Respondent concedes this sentence was error, and we therefore vacate appellant's sentence for count III, a fifth-degree controlled-substance crime.

### DECISION

The trial court properly found the search warrant was supported by probable cause, and properly ruled that appellant's 1991 conviction could be used to impeach him if he chose to testify. The trial court erred in admitting evidence of the weight of the methamphetamine, and in sentencing appellant for both first and fifth-degree controlled-substance crimes. The case is remanded for sentencing on appellant's conviction of controlled-substance crime in the second degree.

**Affirmed in part, vacated in part, and remanded.**