*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0351**

State of Minnesota,
Respondent,

vs.

Chad William Buckley,
Appellant.

**Filed April 8, 2024
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CR-20-3065

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Heather Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joseph McInnis, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY** , Judge

Appellant challenges his conviction of possession of a firearm by a person previously convicted of a crime of violence, arguing that the evidence seized pursuant to a

search warrant must be suppressed because the warrant application did not establish probable cause. We affirm.

## FACTS

On December 14, 2020, a Dakota county law enforcement officer applied for a search warrant for a residence located in Eureka Township, Dakota County. In the warrant application, the officer stated that, on December 11, 2020, the Dakota County sheriff's department received notice that the district court had issued an order for protection (OFP) alleging that appellant Chad William Buckley posed an "immediate danger of domestic abuse" to the protected party, appellant's stepmother, S.B.

Appellant and S.B. lived in the upper and lower portions of S.B.'s residence, respectively. In the OFP petition, S.B. described a text-message video she received from appellant that showed a shotgun lying on appellant's bed. S.B. showed the video to the officer who stated in the warrant application that he "viewed the video and confirmed that the video showed a shotgun lying on [appellant's] bed." S.B. reported that on December 9, 2020, she heard appellant "shooting a gun from the upstairs deck towards the road." She also reported that appellant had sent her several text messages, stating, "[Y]ou looking to see me dead," "I don't want to hurt anyone else but [was] not [] left much of a choice," and "I'm not going anywhere in handcuffs that's a PROMISE AND now there's a big problem. I'm ready to leave this miserable world."

When deputies spoke with S.B., she confirmed the information in the OFP petition. She also reported that appellant struggled with anxiety, depression, post-traumatic-stress disorder (PTSD), suicidal thoughts, and had recently become "more manic." S.B. warned

2

officers that executing a search warrant of appellant's home would upset appellant and may prompt him to bring a gun to the door. S.B. also informed deputies that a neighbor, who lived behind appellant's residence, told her that on December 8, 2020, he heard appellant shooting a firearm out of the back of the Eureka Township residence. On December 12, 2020, the officer spoke with S.B.'s neighbor. The neighbor confirmed that the information he told S.B. was true. The neighbor also recalled that two weeks earlier, he heard five gunshots coming from appellant's residence.

The officer noted in the warrant application that appellant had been convicted in 2004 of felony theft involving a firearm—constituting a crime of violence. Minn. Stat. § 624.712, subd. 5 (2020). As a result, appellant is prohibited from possessing a firearm. *See* Minn. Stat. § 609.165, subd. 1a (2020). Based on this information, the officer requested authorization to search appellant's residence for firearms, ammunition, and other firearm-related items, to show that appellant is an ineligible person in possession of a firearm. The officer also requested permission to search mobile devices capable of having sent the text-message video. The district court issued a warrant for the search of appellant's residence the same day.

Officers executed the search warrant, recovering a 12-gauge shotgun from appellant's bedroom. Respondent State of Minnesota charged appellant with possession of a firearm after being convicted of a crime of violence. *See* Minn. Stat. § 609.165, subd. 1b(a) (2020). Appellant moved to suppress the evidence obtained from the search for lack of probable cause. The district court denied the motion, concluding that the warrant affidavit established probable cause based on the following information:

3

(1) [Appellant] was ineligible to own or possess a firearm due to prior convictions; (2) [Appellant] sent a video of a firearm on his bed; and (3) Two separate witnesses, S.B. and the neighbor, confirmed that they heard gunshots coming from [appellant's] [r]esidence days leading up to the execution of the search warrant.

After a stipulated evidence trial, appellant was found guilty as charged. The district court sentenced appellant to 60 months in prison and stayed the execution of that sentence for five years.

This appeal follows.

## DECISION

Warrants may be issued only upon a finding of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. When determining whether probable cause exists, issuing courts must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A fair probability requires "a direct connection, or nexus, between the alleged crime and the particular place to be searched." *State v. Souto*, 578 N.W2d 744, 747 (Minn. 1998). When assessing whether such a nexus exists, we consider "the type of crime involved, the nature of the items sought, the extent of an opportunity for concealment, and reasonable assumptions about where a suspect would likely keep that evidence." *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *rev. denied* (Minn. Nov. 16, 2004). On appeal, we review only whether "the issuing judge had a substantial

4

basis for concluding that probable cause existed." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted).

The issuing court here had a substantial basis for concluding that there was a fair probability that a firearm would be found at appellant's residence. The search warrant affidavit contained statements from S.B., appellant's stepmother, who also lived at the Eureka Township residence. S.B. stated that five days before the warrant was signed she heard appellant "shooting a gun from the upstairs deck towards the road." S.B. showed law enforcement a video that appellant sent to S.B. showing a shotgun in his bedroom. And appellant sent text messages to S.B. stating that he "[did not] want to hurt anyone else but [he was] not [] left much of a choice," and that he was "ready to leave this miserable world." The text messages concerned S.B. because of appellant's threats to commit suicide and erratic behavior, including "cutting power to the house, disconnecting S.B.'s TV antennas, and throwing things around the house." Appellant's neighbor also reported hearing gunshots from appellant's residence six days before the warrant was signed as well as two weeks prior.

Moreover, a defendant's past crimes may be considered as part of the totality of the circumstances for determining probable cause exists. *State v. Hochstein*, 623 N.W.2d 617, 622-23 (Minn. App. 2001). Deputies discovered that appellant had several felony convictions, including possession of a firearm while ineligible, fleeing peace officers in a motor vehicle, and theft of a firearm—providing the basis that appellant is permanently disqualified from owning a firearm. *See* Minn. Stat. § 609.165, subd. 1b(a) ("Any person who has been convicted of a crime of violence, as defined in section 624.712, subdivision

5," and possesses a firearm, commits a felony); Minn. Stat. § 624.712, subd. 5 (enumerating "theft of a firearm" as a "crime of violence"). These facts established a substantial basis for determining that probable cause existed to search appellant's residence for evidence that appellant possessed a firearm. *See State v. Yarbrough*, 841 N.W.2d 619, 623 (Minn. 2014) (explaining that "it is reasonable to infer that [gun] evidence would be kept at a defendant's residence").

Appellant insists that the search warrant was invalid because (1) the officer's statement that S.B.'s video showed a shotgun and the witnesses' statements that they heard gunshots were conclusory, (2) information in the search warrant was stale, and (3) the neighbor was an unreliable confidential informant. We address each of appellant's arguments in turn.[1]

### 1.    Conclusory statements

A probable cause determination cannot rest on conclusory statements. *Gates*, 462 U.S. at 239. Instead, a warrant affidavit must identify the source of information relied on, allowing the issuing judge "to independently evaluate" the information in the warrant affidavit. *Souto*, 578 N.W.2d at 749.

---

[1] The state argues that appellant failed to preserve on appeal his arguments related to the witnesses' statements, staleness, and the confidential informant. This court generally will not review issues raised for the first time on appeal. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But this court may address the issues when the facts are undisputed and the issues are briefed by both parties. *McKenzie v. State*, 872 N.W.2d 865, 872 (Minn. 2015) (explaining that appellate courts may review "previously unaddressed issue[s]" when they "involve[] a legal question and the parties had an opportunity to brief the question"). Because the record contains the facts necessary to address appellant's arguments and the parties briefed the same, we address each of appellant's arguments.

Appellant relies primarily on *Souto* to assert that because the officer merely "confirmed" that there was a shotgun in the text-message video, his statement was vague and conclusory, making it improper for the district court to consider when determining that probable cause existed. In *Souto*, the Minnesota Supreme Court held that "the officer's statement that 'he [knew]' that Souto was involved in the possession and/or distribution of drugs on a wide scale was too vague and conclusory" to support a determination that Souto was a drug dealer. *Id.* The court reasoned that because the officer's assertions were supported only by evidence of phone calls between Souto's residence and the residence of another suspected drug dealer—without information about the content of the phone calls— the officer's conclusion that Souto was part of the other suspect's "drug ring" "lack[ed] value." *Id.*

Here, unlike in *Souto*, the officer concluded that appellant had a shotgun in his home after reviewing the video that S.B. received from appellant, which S.B. also determined showed a shotgun in appellant's room. The officer noted S.B.'s statement that appellant owned both a cell phone and tablet, giving him the capability to send the text-message video. The officer's conclusion was also based on witness statements that appellant had been heard shooting a firearm from his residence. Based on this information, the issuing judge could make an independent determination that there was probable cause to believe appellant had a gun in his home.

Second, appellant asserts that statements made by S.B. and appellant's neighbor— that they heard appellant firing a gun—are conclusory. He argues that the witnesses had no "basis of knowledge that would allow them to distinguish a gunshot from" any other

7

noise. He suggests that the officer should have inquired into the witnesses' experience with firearms or asked them to offer details about the "muzzle flash," "gun smoke," "discarded shells," or "[the witnesses'] efforts to make a contemporaneous report of the 'gunshots' to the police."

The statements made by S.B. and the neighbor, like the officer's statement, are readily distinguishable from those in *Souto*. Both witnesses described hearing gunshots fired from appellant's residence, corroborating each other's statements. *See Hochstein*, 623 N.W.2d at 623 (explaining informants may corroborate other informants). Appellant points to no authority requiring a witness have extensive experience with guns before reporting the sound of gunshots.

In sum, the affidavit provided the issuing judge with sufficient information to rely on statements made by the officer and the witnesses, as their statements were not conclusory. *See Gates*, 462 U.S. at 239 (explaining "wholly conclusory statement[s]" do not provide a substantial basis for establishing probable cause).

### 2. Stale information

A search warrant must not be based on stale information. *State v. Jannetta*, 355 N.W.2d 189, 193 (Minn. App. 1984), *rev. denied* (Minn. Jan. 14, 1985). Instead, a valid search warrant must rely on "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Souto*, 578 N.W.2d at 750. When assessing whether information is stale, this court considers whether (1) there is ongoing criminal activity, (2) the items to be seized are "innocuous or incriminating," (3) the items are "easily disposable or transferable," and (4) the items "are of enduring utility." *Id.*

Appellate courts will not "set arbitrary time limits in obtaining a warrant." *Jannetta*, 355 N.W.2d at 193. Instead, courts must review the totality of the circumstances with "flexibility and common sense." *Id.*

Appellant asserts that the information in the search warrant was stale because there was a seven to 21-day gap between when the witnesses reported hearing gunshots coming from appellant's residence and the execution of the search warrant. He also notes that gunshots were not reported the week before the execution of the search warrant. This argument is unpersuasive.

In *Souto*, the court held that information in the search warrant was stale because over six months had passed since the report of defendant's purchase of less than an ounce of methamphetamine. 578 N.W.2d at 748. And approximately 10 months had passed since a package containing a controlled substance was attempted to be delivered to the residence where defendant had not lived for seven months. *Id.* In contrast, the search warrant here stated that S.B. and the neighbor heard gunshots coming from appellant's residence as recently as six days before the search warrant was executed. This is a substantially shorter timeframe than that examined in *Souto*. *Id.* Further, appellant was still living at the residence when the warrant was signed and executed.

Moreover, the reports of gunshots allegedly occurred over a two-week period, indicative of an ongoing crime. *See id.* at 750 ("When an activity is of an ongoing, protracted nature, the passage of time is less significant."). And according to S.B., appellant's vehicle was inoperable and he was "unlikely to leave the residence," creating a reasonable inference that appellant remained at his residence with a gun.

9

Finally, appellant's gun was likely of enduring utility. According to S.B., appellant struggled with anxiety, depression, PTSD, manic behavior, and a history of threatening suicide. Appellant sent text messages to S.B. that he (1) did not "want to hurt anyone else but [was] not [] left much of a choice," (2) would not be "going anywhere in handcuffs," and (3) was "ready to leave this miserable world." And S.B. warned deputies that if they executed a search warrant, appellant would likely be upset and may bring a gun to the door. Because appellant was allegedly threatened by others and suicidal, it is reasonable to conclude that appellant's gun was of enduring utility to him. *See Gerdes v. State*, 319 N.W.2d 710, 712-13 (Minn. 1982) (reasoning traffic-control devices are acquired for personal use and not likely to be disposed of quickly); *see also Jannetta*, 355 N.W.2d at 194 (determining that the observation of photographs depicting child pornography and the execution of a warrant two-years later did not render the information stale because "[t]he photographs would likely have enduring utility to the perpetrator for his own sexual gratification").

In sum, the information in the search warrant was not stale.

### 3. Confidential informant

When a probable cause determination is based on hearsay statements, the issuing court must consider the informant's reliability, including their "veracity" and "basis of knowledge." *Gates*, 462 U.S. at 238. But this is "not a rigid two-pronged test," as "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *State v. Mosley*, 994 N.W.2d 883, 890 (Minn. 2023) (quotation omitted). "[W]hen an informant gives

10

police information based on the informant's personal knowledge, police do not need to corroborate significant details in the tip for the tip to be sufficient to support probable cause." *Mosley*, 994 N.W.2d at 892. Even minor details like a defendant's name and address can enhance an informant's reliability. *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985).

The neighbor, deemed a confidential informant in the affidavit, lived directly behind appellant and was familiar with appellant and S.B. The neighbor gave deputies a first-hand account of the gunshots he heard on December 8, 2020, coming from appellant's home. He stated that the shots he heard were in such close proximity to his home that they startled him. And he specifically recalled hearing the gunshots at 5:15 p.m. The neighbor's ability to recall specific first-hand details about what he heard supports his reliability.

Appellant argues that "[t]he neighbor's statements are not reliable because they are uncorroborated claims of a confidential informant." Appellant argues that because (1) the neighbor did not provide predictive information, (2) the neighbor did not voluntarily approach the police, (3) the neighbor did not make an incriminating statement, (4) the officer only spoke with the neighbor over the phone, and (5) the officer did not label the neighbor as a "first-time citizen informant," the neighbor is unreliable. These arguments are not persuasive.[2]

---

[2] Appellant argues that the district court erroneously "assumed the reliability of the neighbor's statements without" analyzing the factors in *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). However, we are not convinced that it was required to do so. *See State v. Hinton*, No. A22-1772, 2023 WL 7483460, *5 (Minn. App. Nov. 13, 2023) (rejecting a strict application of the *Ross* factors—which have not been adopted by the Minnesota Supreme Court—to assess the reliability of a confidential informant in favor of a totality-

11

Appellant is correct that the affidavit does not indicate whether the neighbor provided predictive information, initiated police contact, or made any incriminating statements. But we are not convinced that this made the informant unreliable. *See Mosley*, 994 N.W.2d at 889 (stating, courts must review an informant's reliability based on the "totality-of-the-circumstances") (quotation omitted). First, nothing in the affidavit states that the conversation between the neighbor and the officer occurred over the phone and "[o]ur inquiry is limited to the information presented in the affidavit." *State v. Holland*, 865 N.W.2d 666, 673 (Minn. 2015). Second, as argued by respondent, the neighbor's statements were partially corroborated by S.B.'s statements; both witnesses heard gunshots coming from appellant's residence on December 8 and 9, 2020, respectively. *See Hochstein*, 623 N.W.2d at 623 (concluding an informant was reliable in part because the informant's statements were corroborated by the statements of another informant). And the neighbor's statements were corroborated by appellant's own text-message video showing a shotgun in appellant's bedroom.

Appellant relies on *State v. Gabbert*, 411 N.W.2d 209, 212 (Minn. App. 1987), for the proposition that because the neighbor was not labeled as "a first-time-citizen informant" he is less credible. But *Gabbert* is distinguishable. In that case, this court affirmed the district court's determination that no probable cause existed because the affidavit was based largely on an anonymous caller's tip, the affidavit did not substantiate the informant's credibility, and the informant's tip was proved incorrect. *Id.* at 212-13. In

---

of-the-circumstances assessment); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (nonprecedential opinions are persuasive authority).

contrast here, the neighbor's identity was known to law enforcement, the neighbor's statements were corroborated by other information in the affidavit, the neighbor was familiar with appellant, and the neighbor's information was based on first-hand knowledge—which was never proven to be incorrect. Under the deferential standard afforded to issuing courts, we are convinced that the issuing judge here made a common-sense decision when relying on the neighbor's statements. *See Zanter*, 535 N.W.2d at 633.

In sum, the information in the affidavit supports a finding of probable cause and none of appellant's arguments to the contrary are persuasive. Thus, the district court did not err by denying appellant's motion to suppress the evidence seized under the search warrant and appellant is not entitled to a new trial.

**Affirmed.**